No. 97-619

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 134

STEVEN M. CAMERON,

Plaintiff and Appellant,

v.

TEX L. MERCER,

Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James T. Harrison, Jr.; Harrison, Loendorf, Poston & Duncan
Helena, Montana

For Respondent:

Mark S. Williams; Williams & Ranney, Missoula, Montana

Submitted on Briefs: March 26, 1998

Decided: May 29, 1998
Filed:

_____
Clerk
Justice W. William Leaphart delivered the Opinion of the Court.

1    Appellant Steven M. Cameron (Cameron) appeals from the decision of the Fourth Judicial District Court, Missoula County, denying his motion for a directed verdict on the issue of liability.  We affirm.

2    We address whether the District Court erred in refusing to grant a directed verdict on liability where the facts showed that Respondent Tex Mercer (Mercer) skidded across the center line and collided with Cameron's oncoming vehicle.

Factual and Procedural Background

3    In the early morning of May 10, 1995, Cameron was traveling westbound on Highway 10, a two-lane road, a few miles west of Missoula, Montana.  Cameron was driving a Chevy sedan on his way to his job at a construction site.  Mercer was traveling eastbound on Highway 10 in a Ford Bronco.  He was on his way to work as a bus driver for Mountain Line bus service in Missoula.  It was still dark, and both drivers were using their headlights.  Neither driver was speeding.

4    Just after Mercer rounded a curve in the road, he drove over the fog line, out of his lane, and off the road onto the gravel shoulder.  The parties dispute whether Mercer's departure from the road was at a gradual angle or caused by an abrupt swerve.  As he attempted to drive back onto the road, Mercer's vehicle skidded in a sideways "yaw."  Cameron, attempting to avoid a collision, moved to the far outside of his lane.  However, Mercer's vehicle skidded across both lanes of travel and collided with Cameron's vehicle.  The collision occurred between the fog line and shoulder on Cameron's side of the roadway.  Cameron's vehicle rolled, and both vehicles sustained damage.

5    Cameron filed suit in the District Court, alleging that Mercer was negligent in the operation of his vehicle.  At trial, Cameron testified that Mercer had told him at the scene that he had swerved to miss an animal on the roadway.  Montana Highway Patrol Officer Christopher Schultz (Officer Schultz) testified that he interviewed Mercer at the emergency room at St. Patrick's Hospital following the accident and that Mercer never mentioned any oncoming cars.  Officer Schultz testified that Mercer's only explanation for the accident was that a small, furry animal had caused him to swerve off the roadway.  Officer Schultz investigated the scene and concluded that Mercer's vehicle had traveled off the paved surface of the roadway for about 81 feet and that when Mercer attempted to return to the roadway, his vehicle skidded across the road in a sideways "yaw."

6    Mercer's sister, Sandra Lee (Lee) was present during Mercer's interview with Officer Schultz and testified that Mercer told the officer that he swerved to avoid some headlights in his lane.  Lee testified that Mercer told Officer Schultz that after he swerved to avoid the oncoming car, he saw a small animal running across the roadway.

7    At the close of his case-in-chief, Cameron moved for a directed verdict on liability.  The District Court reserved ruling on the motion.  After all of the evidence had been presented and the jury instructions had been settled, the court denied Cameron's motion for a directed verdict.  The jury returned a

verdict for Mercer.  Subsequently, Cameron moved for a new trial, and the District Court denied the motion.

### Standard of Review

8   We review a motion for a directed verdict to determine, as a matter of law, whether the non-moving party could prevail upon any view of the evidence including the legitimate inferences to be drawn therefrom.  Ryan v. City of Bozeman (1996), 279 Mont. 507, 928 P.2d 228.  Courts will exercise the greatest self-restraint in interfering with the constitutionally-mandated process of jury decision.  Ryan, 928 P.2d at 229.  Thus, unless there is a complete absence of any credible evidence in support of the verdict, a motion for a directed verdict is not properly granted.  Ryan, 928 P.2d at 230 (citing Barmeyer v. Montana Power Company (1983), 202 Mont. 185, 191, 657 P.2d 594, 597 (overruled on other grounds)).

### Discussion

9   Cameron argues that the District Court erred in refusing to grant a directed verdict on the issue of liability.  Cameron contends that because Mercer violated several traffic statutes --  61-8-322, MCA (passing on the right);  61-8-328, MCA (driving within a single lane);  61-8-321, MCA (driving on the right side of the roadway)-- the court should have found that he was negligent as a matter of law.  However, as the district court noted, we have held that the fact that a vehicle is being driven outside of its lane on the wrong side of the highway at the time of a collision does not itself make the driver guilty of negligence as a matter of law.  Lyndes v. Scofield (1979), 180 Mont. 177, 589 P.2d 1000.

10  In Lyndes, 589 P.2d at 1001, the parties were traveling in opposite directions on 39th Street in Missoula, Montana.  Because the roadway was covered with ice, both parties were driving about 25 m.p.h., well below the posted 35 m.p.h. limit.  Lyndes, 589 P.2d at 1001.  Defendant Scofield struck a pothole in the roadway with her right front tire, causing the rear of her vehicle to swing out and be struck by an oncoming vehicle.  Lyndes, 589 P.2d at 1001.  The impact caused her vehicle to swing violently to the right and then back across the center lane into the path of the vehicle driven by plaintiff Lyndes.  Lyndes, 589 P.2d at 1001.

11  Lyndes filed suit, alleging that Scofield had negligently operated her vehicle.  Lyndes, 589 P.2d at 1001.  The jury returned a verdict in Scofield's favor, and Lyndes moved for a new trial.  Lyndes, 589 P.2d at 1001.  The district court granted his motion, holding that the evidence was not sufficient to uphold the jury's verdict and that Scofield was negligent as a matter of law for violating the basic rule statute (current version at  61-8-303, MCA) and the statute requiring drivers to keep to the right side of the roadway (current version at  61-8-321, MCA).  Lyndes, 589 P.2d at 1001-02.

12  On appeal, this Court reversed the district court.  Lyndes, 589 P.2d at 1004.  We held:

> It is undisputed that at the time of the accident, Scofield's
> vehicle was skidding down the road in the left-hand lane and
> that at the point of collision, the Lyndes' vehicle was well within

its proper lane of traffic. The question simply is, does this mean Scofield was negligent as a matter of law? We conclude it does not . . . .

The District Court erred in concluding that violation of the statute constituted negligence as a matter of law. It is well established that involuntary violation of a statute in an emergency due to circumstances beyond the actor's control does not constitute negligence per se. Rather, Scofield's presence in the incorrect lane is only prima facie evidence of negligence which may be rebutted. This raises a factual issue which must be left to the jury to decide.

Lyndes, 589 P.2d at 1004 (citations omitted).

13  In this case, the fact that Cameron was in Mercer's lane of travel at the time of the collision does not warrant a finding that he was negligent as a matter of law. As discussed below, Mercer presented the jury with evidence that he had swerved to avoid hitting an oncoming vehicle and then lost control trying to regain the roadway. Under Lyndes, the District Court correctly allowed the jury to weigh the evidence and decide whether Mercer acted with reasonable care under the circumstances.

14  In Lyndes, this Court also held that the jury had sufficient evidence before it to resolve the factual issues in favor of Scofield. Lyndes, 589 P.2d at 1002-03. In that case, the jury heard testimony on the condition of the roadway, the weather, and the size and location of the pothole. Lyndes, 589 P.2d at 1001. Scofield testified that she was driving carefully at a safe speed and that her car was in good condition. Scofield also testified that she had driven on 39th Street about two weeks prior to the day of the accident and had not noticed the pothole. Lyndes, 589 P.2d at 1001. We held that the jury was entitled to believe Scofield's testimony and find that she had not driven negligently. Lyndes, 589 P.2d at 1003.

15   In this case, the parties presented conflicting theories as to the cause of the accident. Cameron's theory was that Mercer, after falling asleep or because he was not paying attention, allowed his vehicle to drift off of the roadway and then over-corrected and skidded out of control. Mercer's theory was that any statutory violations were involuntary; that is, that he was forced to swerve off of the roadway by an oncoming car and that he did everything he could to keep control of his vehicle and avoid an accident. The jury chose to accept Mercer's version of events, and we hold that the record contains sufficient evidence to support the verdict.

16  Mercer had been a bus driver for 13 years prior to the accident. At the time of the accident, he was not speeding, and his vehicle was in good condition. Mercer testified that when he saw headlights in his lane, he "reacted reflex and swerved to the right." He stated that his vehicle was only off of the roadway for a few seconds and that he did all he could to regain control. Officer Schultz testified that the appropriate driver response in this situation is to avoid braking and steer back onto the roadway. Officer Schultz found no skid marks to indicate that Mercer had applied his brakes.

17 Cameron argued that Mercer had drifted off of the roadway because he was tired or inattentive and suggested that Mercer fabricated the story about swerving to avoid an oncoming car. However, Mercer presented ample evidence to rebut Cameron's theory. Officer Schultz testified that Mercer "had swerved to miss something, obviously." Lee testified that she was present in the emergency room when Mercer told Officer Schultz the same story he told at trial--that he had swerved to avoid an oncoming car. The jury could infer from Officer Schultz's measurements that Mercer's vehicle left the roadway rapidly, consistent with an abrupt swerve. Further, the accident occurred just after Mercer had successfully negotiated a curve in the roadway, which contradicts Cameron's suggestion that Mercer had fallen asleep.

18 Conflicts of evidence, including witness credibility, are properly resolved by the finder of fact. Whiting v. State (1991), 248 Mont. 207, 810 P.2d 1177. We have held that it is "an abuse of discretion for the trial court to grant a new trial solely because it chooses to believe testimony different than that believed by the jury. To do so would create a bench supremacy and sap the vitality of jury verdicts." Brookings v. Thompson (1991), 248 Mont. 249, 252, 811 P.2d 64, 65. While a jury's decision can, at times, surprise and amaze, it must be given the greatest deference by the courts. In this case, the jury resolved the conflicts of evidence in Mercer's favor, and we will not disturb its findings.

19 Based on the foregoing, we affirm the decision of the District Court.

/S/   W. WILLIAM LEAPHART

We concur:
/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  KARLA M. GRAY
Justice Terry N. Trieweiler specially concurring.

20 I concur with the majority's conclusion that there was sufficient evidence to support the jury's verdict for the defendant based on the instructions that were given to the jury. Furthermore, since the adequacy of the instructions has not been raised as an issue on appeal, I would not reverse the judgment of the District Court for failure to properly instruct the jury. However, I write separately to clarify that, in my opinion, it would be a rare situation in which violation of a motor vehicle statute would not constitute negligence per se.

21 We have repeatedly held that violation of a statute enacted for the safety of the public, including those which regulate the operation of motor vehicles on the public highways, is negligence per se. See Kudrna v. Comet Corp. (1977), 175 Mont. 29, 38-39, 572 P.2d 183, 188-89.

22 The principle of negligence per se, as it pertains to the operation of motor vehicles, is an important principle. We must be careful to avoid its reduction to a meaningless concept capable of evasion by the flimsiest of excuses (i.e., the sudden appearance of a small, nondescript, furry animal). Liability laws exist for the purpose of allocating the cost of motor vehicle accidents. Motor vehicle laws are enacted to provide for the safe and predictable movement of vehicles. The principle of negligence per se has been adopted for the purpose of allocating liability based on noncompliance with

motor vehicle laws when negligence would be otherwise difficult to prove.

23 The theory on which the rule of negligence per se is based is that as between two drivers--one who has been free from fault and violated no law, and one who has violated a law on which the other depended--fault should, as a matter of policy, be attributed to that person who violated the law. Carving out exceptions for anything but the most compelling reasons reverts to the days of "unavoidable accidents," and destroys the necessary predictability of motor vehicle operator liability. The notion of "unavoidable accidents" was discarded in Montana over thirty years ago. See Graham v. Rolandson (1967), 150 Mont. 270, 290-91, 435 P.2d 263, 273-74.

24 In this case, the plaintiff was proceeding in a lawful manner in his own lane of travel and had a right to occupy that lane of travel without interference from the defendant's vehicle which had been proceeding in the opposite direction. Instead, the defendant lost control of his vehicle, skidded across plaintiff's entire lane of travel, and collided with the plaintiff between the fog line and shoulder on the plaintiff's side of the road.

25 Based on principles of negligence per se, defendant should have had a stronger burden than was imposed on him by the District Court's instructions to excuse his presence on the plaintiff's side of the road. The defendant's interference with the plaintiff's right to safely operate his vehicle on the highway violated at least three separate motor vehicle statutes. Section 61-8-321, MCA, required that the defendant keep his vehicle on the right half of the highway; 61-8-322, MCA, required that vehicles proceeding in opposite directions pass each other to the right, and that each vehicle give the other at least one-half of the main traveled portion of the roadway; and 61-8-328, MCA, required that the defendant operate his vehicle entirely within his own lane of travel unless it was safe to do otherwise. The plaintiff had a right to rely on compliance with all of those statutes and the jury should have been so instructed. The jury should have been instructed that failure to comply with those statutes constituted negligence per se.

26 Not only was the jury not instructed on the significance of violation of motor vehicle statutes, the effect of that omission was compounded when the court instructed the jury that:

> The mere happening of an accident, in itself, is not evidence of negligence. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for breach of a legal duty by defendant, which is the cause of injury to the plaintiff.

27 The "mere happening of an accident" instruction is an anachronism which has been disapproved by this and other courts for at least twenty years. In Helmke v. Goff (1979), 182 Mont. 494, 500, 597 P.2d 1131, 1134, we noted that:

> "In Graham v. Rolandson (1967), 150 Mont. 270, 435 P.2d 263, an ordinary negligence action, we condemned an 'unavoidable accident' instruction. There we concluded that it injected a straw issue into the case and is confusing to the jury. This is somewhat akin to 'the mere fact of an injury' instruction as was given in this case. In Gagosian v. Burdick's Television & Appliances (1967), 254 Cal.App.2d 316, 62 Cal.Rptr. 70, California eliminated 'the fact of an injury' instruction from ordinary negligence actions, stating:

'. . . Since it but elucidates the obvious to the jury, and need not be given to meet any rule of appellate procedure, we join heartily in the recommendation of its authors for its "decent burial".  The trial judge who strikes the "mere happening" instruction from his instruction book and completely erases it from his memory will save time in instruction and much in retrial after reversal.'

We also conclude that in an ordinary negligence action that such instruction should be given a 'decent burial' in this State." [Hunsaker v. Bozeman Deaconess Foundation (1978), 179 Mont. 305,] 588 P.2d at 506, 507.

The evil in giving such an instruction in a Res ipsa case is that the jury may consider that they are foreclosed from considering the evidence provided by the happening of the accident itself.  Jensen v. Minard (1955), 44 Cal.2d 325, 282 P.2d 7, 9. Therefore we hold the instructions here to be so incompatible as to require reversal.

28  Likewise, under the circumstances of this case in which the defendant's conduct violated at least three separate motor vehicle statutes, the mere happening of the accident instruction was incompatible with the usual presumption that the defendant's conduct constituted negligence as a matter of law.

29  I concur that we have, in the past, held that an involuntary violation of a statute in an emergency does not constitute negligence per se.  In Lyndes v. Scofield (1979), 180 Mont. 177, 185, 589 P.2d 1000, 1004, we held that:

It is well established that involuntary violation of a statute in an emergency due to circumstances beyond the actor's control does not constitute negligence per se.  Duchesneau v. Mack Truck, Inc. (1969), 158 Mont. 369, 377, 492 P.2d 926, 930.  Rather, Scofield's presence in the incorrect lane is only prima facie evidence of negligence which may be rebutted.  McGinnis v. Phillips (1922), 62 Mont. 223, 228, 205 P. 215, 216.

30  However, I would apply this limited exception to the principle of negligence per se in only the most extreme situations.  For example, where the defendant's presence on the wrong side of the road is caused by the plaintiff's own prior negligence.  See, e. g., Shannon v. Hulett (1983), 205 Mont. 345, 668 P.2d 228.  However, I would not apply the exception under any circumstance where the party accused of being negligent is on the wrong side of the road due to his or her own conduct.  Examples where I would not apply the exception are the driver's failure to observe and avoid the chuckhole which caused her to slide out of control in the Scofield case, and a driver's calculated decision to avoid a small

furry animal
at the expense of oncoming traffic, as was established by the investigating patrolman's initial
investigation in this case.

31 Furthermore, I believe it is necessary for a jury's proper application of the law to
disputed facts that it first be properly instructed on the law. This jury should have been
instructed about the general rule of negligence per se, and the motor vehicle statutes which
were violated. It should then have been instructed about the very narrow circumstances in
which the rule would not apply. None of that was done. However, since the court's
instructions to the jury are not the basis for the plaintiff's appeal, and since I concur with the
majority that on the very narrow issue which has been raised there was sufficient evidence
to support the jury's verdict, I concur with the majority's conclusion that the judgment of the
District Court should be affirmed.

/S/   TERRY N. TRIEWEILER

Justices William E. Hunt, Sr., James C. Nelson, and Jim Regnier join in the foregoing specially concurring opinion.

/S/   WILLIAM E. HUNT, SR.
/S/   JAMES C. NELSON
/S/   JIM REGNIER