No. 97-593

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 248

LINDA LEE MOORE and H. GARY MOORE,

Plaintiffs and Appellants,

v.

IMPERIAL HOTELS CORPORATION,

Defendant and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Jack E. Sands, Attorney at Law, Billings, Montana

No

For Respondent:

John O. Mudd, Lucy T. France; Garlington, Lohn & Robinson,

Missoula, Montana

Submitted on Briefs: April 23, 1998

Decided: October 20, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

**¶1 Linda Lee Moore (Linda) and H. Gary Moore (Gary) (collectively the Moores) brought an action against their former employer, Imperial Hotels Corporation (Imperial), alleging that Imperial wrongfully discharged them and violated several of Montana's wage and hour laws. The Thirteenth Judicial District Court, Yellowstone County, entered judgment on a jury verdict in favor of Imperial on all claims. The Moores appealed. We affirm.**

**¶2 The following issues are presented on appeal:**

**¶3 1. Did the District Court err in ruling that the Moores' wage and hour claims were governed by federal law rather than state law?**

**¶4 2. Did the District Court err in refusing the Moores' Proposed Instructions 16, 21A, and 29, regarding the following: sleeping hours for employees who are required to be on duty 24 hours or more, the elements of wrongful discharge, and Imperial's burden of proving mitigation of damages?**

# BACKGROUND

**¶5 Imperial is a Delaware corporation which operates the Econo Lodge, a motel located in Billings, Montana. Carol Kensa (Ms. Kensa) is a District Manager employed by Imperial to oversee five Econo Lodges in Montana and Idaho. In January 1994, Ms. Kensa placed an advertisement in the Bozeman, Montana newspaper seeking qualified persons to manage the Econo Lodge in Billings. The Moores answered the advertisement and Ms. Kensa selected them to participate in Imperial's training program.**

**¶6 The Moores each signed a Management Training Program Agreement whereby they agreed that they were not employees of Imperial; that they were not guaranteed employment by Imperial at the conclusion of the training program; and that the training program would be in effect six days a week for as many weeks as needed. In turn, Imperial agreed to provide the Moores an opportunity to experience and learn the duties of an Imperial Inn Manager; living accommodations during the training program; and living expenses during the training program at the rate of $18 per person per day. From January 20, 1994, until February 15, 1994, the Moores were trainees under the tutelage of Bob and Ethel Darnell, managers of the Econo Lodge in Bozeman.**

**¶7 On February 16, 1994, after the Moores' completion of the training program, Ms. Kensa hired Linda to be the resident manager of the Econo Lodge in Billings, and hired Gary to be a field employee. It was understood that Linda was a salaried employee responsible for the general operations of the motel, and Gary was an hourly employee responsible for maintenance and front desk tasks. Part of the Moores' compensation included living in the on-site apartment adjacent to the motel office.**

**¶8 The Moores each signed an employment agreement with Imperial. Gary's employment agreement provided that he would be paid at the rate of $5 per hour, that his hours would be flexible and irregular, and that he would not work more than 40 hours per week without the approval of Ms. Kensa. The hours-per-week work restriction imposed on Gary reflected a company policy designed to prevent favoritism on the part of a motel manager toward his or her spouse. In addition to signing employment agreements, Linda and Gary signed a document entitled "Employment Acknowledgment Form" in which they acknowledged that their**

employment with Imperial was "at will," and could be terminated at any time. On this form the Moores also acknowledged that they had received the company handbook, and that they were obligated to comply with the policies contained therein. Additionally, Linda signed an untitled document in which she acknowledged receipt of the Imperial Inns Operating Manual and agreed to adhere to its policies and procedures.

¶9 In April 1994, the Billings Econo Lodge was inspected by a representative from the local field office of the United States Department of Labor (USDL) for compliance with all federal employment standards. At this time, Gary told the inspector that he was working overtime but only being paid for 40 hours per week. The inspector noted that there was no record of Gary working overtime. When the inspector asked why the Moores did not report Gary's overtime hours, Gary said he thought he would be fired for doing so. The inspector informed the Moores that they must report Gary's overtime hours in order to be compensated for them. In his final report, the inspector stated that Imperial had committed no violations. Despite the inspector's directive, the Moores did not report Gary's alleged overtime hours. As manager of the motel, Linda was responsible for reporting to Imperial the overtime hours worked by all employees at the Billings Econo Lodge. Linda reported to Imperial that Gary did not work overtime hours at the motel.

¶10 On August 8, 1994, the Moores' employment with Imperial was terminated. Ms. Kensa informed the Moores that they were being fired due to their "lack of control" in managing the motel. Ms. Kensa also referred to the Moores' apparent dissatisfaction with Imperial, and Imperial's mutual dissatisfaction with the Moores. Ms. Kensa told the Moores to vacate the apartment within 24 hours so that she could manage the motel until a replacement could be found.

¶11 Ms. Kensa testified that her decision to fire the Moores was the result of several incidents. She testified that the Moores developed an "I don't care" attitude. Linda had been warned about her failure to conduct employee scheduling and vacation scheduling according to company procedure. She had also been warned about her failure to follow directions regarding company property. Ms. Kensa warned Gary in response to Linda's complaint that Gary was not "pulling his weight" around the motel. Ms. Kensa had received reports that Gary was physically abusing Linda. The final incident contributing to the Moores' termination involved a missing swimming pool cover. During the Moores' employment, Imperial removed the swimming pool

from the Billings Econo Lodge. Ms. Kensa specifically instructed the Moores to store the pool equipment for a time until it could be transported to the Twin Falls Econo Lodge. When Ms. Kensa later asked about the pool cover, the Moores said they did not know where it was and acted as if it were unimportant. It appeared to Ms. Kensa that the Moores did not care that a large, expensive piece of pool equipment was missing.

¶12 Soon after their termination, the Moores filed a claim with the USDL alleging that Imperial had violated the federal Fair Labor Standards Act (FLSA) by failing to pay them wages during their training period at the Bozeman Econo Lodge, and by failing to pay Gary overtime compensation while he was employed at the Billings Econo Lodge. The Moores' complaint was assigned to the same USDL inspector that previously had spoken with the Moores in April. The inspector conducted an interview with the Moores. With respect to the wage claim, the Moores claimed they each worked sixteen hours a day during training, with only a short break for meals, for which they did not receive compensation. With respect to the hour claim, Gary stated that he was the Maintenance Manager for the Billings Econo Lodge; that he supervised eight employees; and that he also managed the desk as needed. Gary claimed that he worked 120 hours per week during his employment with Imperial, but never received overtime compensation. Gary stated that he believed Imperial's failure to pay overtime compensation was a "nationwide policy" of the corporation.

¶13 The inspector telephoned Ms. Kensa about the Moores' wage and hour claims. Ms. Kensa refuted the Moores' claims that they worked sixteen hours a day during training and that Gary worked 120 hours per week during his employment at the Billings Econo Lodge. Imperial's personnel director, Ms. Michelle Alarcon, informed the inspector of the Management Training Program Agreements that the Moores had signed, and stated that Imperial's training program fully complied with the law. On September 5, 1994, the inspector reported that the Moores' complaints could not be substantiated, and concluded that Imperial had committed no violations.

¶14 On October 31, 1994, the Moores filed a complaint in state court alleging that Imperial had wrongfully discharged them and had violated Montana's wage, minimum wage, and overtime compensation statutes, §§ 39-3-204, -404, and -405, MCA, respectively. Regarding the wrongful discharge claim, the Moores alleged that they were fired without good cause, or in the alternative, that they were fired in retaliation for challenging Imperial's wage and hour policies. The Moores' wage and

hour claims reflected the same complaints that they had previously lodged with the USDL.

¶15 A jury trial was held January 22, 1996. After hearing all the evidence, including testimony from the Moores and thirteen other witnesses, the jury found that the Moores were not employees during their training period with Imperial and were not entitled to wages during that time. The jury also found that Gary did not work overtime during his employment with Imperial and was not entitled to overtime compensation. Lastly, the jury found that Imperial did not wrongfully discharge the Moores. Additional facts will be provided as necessary to dispose of the issues raised.

## DISCUSSION

### *Issue one*

¶16 Did the District Court err in ruling that the Moores' wage and hour claims were governed by federal law rather than state law?

¶17 During the settlement of instructions phase of the trial, the District Court concluded that federal law rather than state law governed the Moores' wage and hour claims. The Moores assert that this ruling was incorrect and list several reasons in support of their assertion. Imperial argues that whether federal or state law applies to the Moores' wage and hour claims is irrelevant in light of the jury's factual findings. First, the jury found that the Moores were not employees during their training period with Imperial and were not entitled to wages. Second, the jury found that Gary did not work overtime during his employment with Imperial and was not entitled to overtime compensation. Imperial argues that these threshold findings render moot any inquiry into the applicability of either federal or state law. We agree with Imperial.

¶18 In this case, whether federal or state law applies to the Moores' wage and hour claims is relevant only to the calculation of damages. The Moores' entitlement to damages is wholly dependent upon a finding that the Moores were in fact employees of Imperial during their training, and that Gary in fact worked overtime. Here, the jury found the opposite. The jury heard all the evidence presented and chose not to believe the Moores' version of events. Resolving conflicts in the evidence, judging the credibility of the witnesses, and finding the facts are acts uniquely within the

province of the jury. Durden v. Hydro Flame Corp., 1998 MT 47, ¶ 27, 955 P.2d 160, ¶ 27, 55 St.Rep. 198, ¶ 27. We will not disturb the jury's findings absent a showing that they lack an evidentiary basis. Durden, ¶27. Because the jury never reached the issue of damages in the District Court, any inquiry into the applicability of either federal or state law in the calculation of damages is moot. On this basis, we decline to address the propriety of the court's ruling that federal law rather than state law applies to the Moores' wage and hour claims.

¶19 The Moores also argue for the first time on appeal that Imperial should have raised the federal law versus state law issue as an affirmative defense in its initial Answer. We decline to address the merits of this argument because it was not raised in the District Court and may not be raised for the first time on appeal. Nitzel v. Wickman (1997), 283 Mont. 304, 313, 940 P.2d 451, 456.

*Issue two*

¶20 Did the District Court err in refusing the Moores' Proposed Instructions 16, 21A, and 29, regarding the following: sleeping hours for employees who are required to be on duty 24 hours or more, the elements of wrongful discharge, and Imperial's burden of proving mitigation of damages?

¶21 We review jury instructions in a civil case for abuse of discretion. Fillinger v. Northwestern Agency, Inc. (1997), 283 Mont. 71, 76, 938 P.2d 1347, 1350. A district court has broad discretion in deciding whether to give or refuse a party's proposed jury instruction. Fillinger, 283 Mont. at 76, 938 P.2d at 1350. In reviewing whether a particular jury instruction was properly given or refused, we must consider the instruction in its entirety, as well as in connection with the other instructions given and with the evidence introduced at trial. Fillinger, 283 Mont. at 83, 938 P.2d at 1355. The party assigning error to a district court's instruction must show prejudice in order to prevail. Fillinger, 283 Mont. at 76, 938 P.2d at 1351. Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. Fillinger, 283 Mont. at 76, 938 P.2d at 1351. We have also held:

> A party is not prejudiced by a refusal of his proposed instructions where the subject matter of the instruction is not applicable to the pleadings and facts, or not supported by the evidence introduced at trial, or the subject matter is adequately covered by other instructions submitted to the jury.

Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 360, 916 P.2d 122, 132 (citations omitted).

¶22 The Moores offered Proposed Instruction 16 which set forth the law on when employees who are required to remain on duty 24 hours or more may claim sleep hours as time worked. Imperial objected to this instruction on the ground that it was not applicable to the facts of the case. The court sustained the objection and refused the instruction.

¶23 The Moores argue that the court abused its discretion in refusing Proposed Instruction 16 because the instruction was critical in determining whether Gary worked overtime. Imperial counters that Proposed Instruction 16 was irrelevant because it addressed employees who are required to be on duty 24 hours or more and Gary was not such an employee. On this basis, Imperial argues that the court properly refused the instruction. We agree with Imperial.

¶24 Whether Gary was required to be on duty 24 hours or more was never an issue in this case. Further, the record is void of any facts suggesting that Gary was required to be on duty 24 hours or more. Gary was not the resident manager. The fact that Gary lived on the premises does not mean that he was *required* to be on duty constantly. Gary's employment agreement provided that he was not to work more than 40 hours per week. The record supports the fact that Gary was free to leave the premises at any time. Because Gary was not required to be on duty 24 hours or more, Proposed Instruction 16 was not applicable to the facts and was properly refused. We hold the court did not abuse its discretion in refusing the Moores' Proposed Instruction 16.

¶25 The Moores also offered Proposed Instruction 21A which set forth the elements of wrongful discharge pursuant to § 39-2-904, MCA. The instruction provided that the Moores' discharge was wrongful only if:

>    (1) it was in retaliation for their refusal to violate public policy or for reporting a violation of public policy; or

>    (2) it was not for good cause as defined in these instructions; or

>    (3) the employer violated the express provisions of its own written personnel

policy in discharging the plaintiffs.

Imperial objected only to the portion of subpart (1) of the instruction referring to retaliation for refusing to violate public policy. Imperial objected to this portion of the instruction on the ground that it was inapplicable to the pleadings and facts of the case. Imperial pointed out that the Moores never alleged, in pleadings or otherwise, that Imperial discharged them in retaliation for their refusal to violate public policy. The court sustained the objection and refused the Moores' Proposed Instruction 21A in favor of an instruction which included all the elements of wrongful discharge except the portion of subpart (1) referring to discharge in retaliation for refusing to violate public policy.

¶26 The Moores argue that the court's refusal of their Proposed Instruction 21A was an abuse of discretion because the facts support the theory that the Moores were discharged in retaliation for refusing to violate public policy. We disagree. Our examination of the Moores' initial complaint, their contentions in the pretrial order, and their brief on appeal reveals that at no time did the Moores advance the theory that Imperial discharged them in retaliation for refusing to violate public policy. Additionally, our review of the record reveals that no facts exist to support this theory. We conclude that the subject matter of the omitted material in the Moores' Proposed Instruction 21A was not applicable to the pleadings and facts in this case. Therefore, we hold that the District Court did not abuse its discretion in refusing the Moores' Proposed Instruction 21A.

¶27 Lastly, the Moores contend that the court erred in refusing their Proposed Instruction 29 regarding Imperial's burden of proving that the Moores failed to mitigate their damages. We need not address the Moores' contention because, as previously discussed, the jury never reached the issue of damages. Any error in refusing the Moores' Proposed Instruction 29 would be harmless because the Moores can show no prejudice as a result of the refusal. *See* Maurer v. Clausen Distributing Co. (1996), 275 Mont. 229, 240, 912 P.2d 195, 201.

¶28 The Moores also argue, in passing, that the court erred in accepting Imperial's Proposed Instruction 3 which addressed the Moores' burden of proof. The Moores argue that the portion of the instruction which states that the Moores have the burden of proving "[t]hat the defendant's failure to terminate them for good cause was in turn a cause of their damage" was an incorrect statement of the law. However, the Moores cite no legal authority in support of their argument as required

by Rule 23, M.R.App.P. Further, the claim of wrongful discharge is properly classified as a tort. It is axiomatic that in a tort action, the plaintiff has the burden of proving causation. *See* Gentry v. Douglas Hereford Ranch, Inc., 1998 MT 182, ¶ 24, ___ P.2d ___, 55 St.Rep. 737, ¶ 24. We conclude that the District Court did not err in giving Imperial's Proposed Instruction 3.

¶29 Affirmed.

/S/ WILLIAM E. HUNT, SR.

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER