No. 01-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 49

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CLIFFORD THOMAS LaMERE,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade, Cause No. ADC-97-098
The Honorable Kenneth R. Neill, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Hon. Mike McGrath, Montana Attorney General; Ilka Becker, Assistant Attorney General, Helena, Montana; Brant Light, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs: December 13, 2002

Decided: March 24, 2003

Filed:

_____
Clerk

District Judge Blair Jones, sitting by designation for Justice W. William Leaphart, delivered the Opinion of the Court.

¶1 Clifford Thomas LaMere (LaMere) appeals from the Eighth Judicial District Court's denial of LaMere's motion for directed verdict of acquittal based on insufficiency of the evidence and LaMere's conviction of mitigated deliberate homicide. We affirm.

¶2 The following issue was presented on appeal:

¶3 Did the District Court abuse its discretion when it denied LaMere's motion for directed verdict of acquittal?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On September 7, 2000, LaMere was convicted by a Cascade County jury of mitigated deliberate homicide for the stabbing death of Great Falls resident Steven Brownlee (Brownlee). The District Court sentenced LaMere to serve 40 years in the Montana State Prison for the commission of mitigated deliberate homicide together with a consecutive 10 year term for using a dangerous weapon in the commission of the offense.

¶5 At the close of the State's case at trial, LaMere moved for a directed verdict of acquittal contending that the State presented insufficient evidence to prove beyond a reasonable doubt that LaMere killed Brownlee while acting under extreme mental or emotional stress for which there is a reasonable explanation or excuse, an element of mitigated deliberate homicide. The District Court denied the motion and the case ultimately went to the jury. The jury returned a guilty verdict. LaMere appeals, asserting that the

2

District Court erred when it denied LaMere's motion for directed verdict of acquittal.

¶6     This is the second appeal arising from criminal charges filed against LaMere resulting from Brownlee's death. On March 13, 1997, LaMere was charged with deliberate homicide for stabbing Brownlee to death in an alley behind Brownlee's apartment in Great Falls, Montana. At his first trial, LaMere requested instructions on the affirmative defense of mitigated deliberate homicide. On August 22, 1997, a jury convicted LaMere of mitigated deliberate homicide.

¶7     LaMere appealed the conviction, challenging the process by which the Clerk of the District Court summoned potential jurors for jury duty. This Court reversed LaMere's conviction, ruling that the process of summoning jurors by telephone does not comply with Montana law and constitutes structural error. *State v. LaMere*, 2000 MT 45, ¶ 42, 298 Mont. 358, ¶ 42, 2 P.3d 204, ¶ 42. Upon remand, the State charged LaMere with mitigated deliberate homicide. A jury again found LaMere guilty of the offense.

¶8     In considering whether the District Court abused its discretion in denying LaMere's motion for directed verdict of acquittal, we initially review pertinent evidence presented at trial relevant to the extreme mental or emotional stress element of mitigated deliberate homicide.

¶9     At trial, the State called Lawrence Colwell (Colwell) as a witness. Colwell was a neighbor of the victim, Brownlee. Describing the altercation he witnessed, Colwell testified on direct examination that LaMere was the aggressor, did all of the fighting, and delivered all of the blows. Colwell indicated that Brownlee was only trying to defend himself and

3

"never did anything toward LaMere." However, on cross-examination, Colwell acknowledged that he had given a taped statement to police where he "probably" told a detective that he saw two drunks arguing behind Colwell's garage and they appeared to be "half heartedly thumping on each other." Testimony from Dan Ingersoll (Ingersoll), a detective investigating Brownlee's death, confirmed that Colwell had given Ingersoll a taped statement approximately a month after the incident. Ingersoll testified that Colwell reported seeing a couple of drunks having a disagreement "fighting each other, wrestling around." In Ingersoll's view, Colwell's taped statement indicated that both LaMere and Brownlee were struggling and Colwell saw LaMere and Brownlee "thumping each other." There was testimony that Brownlee was larger in stature and heavier than LaMere.

¶10    Julie Jorgensen, another of Brownlee's neighbors, testified that she had occasion to witness the confrontation between LaMere and Brownlee as she traveled up the alley in her car on the way to an appointment. Her car was very close to LaMere and Brownlee as the men were standing almost in the middle of the alley and she had to negotiate her vehicle around them. Ms. Jorgensen testified that both men appeared to be angry and were circling each other "like men sometimes do before they get into a fight."

¶11    The State also presented testimony from Great Falls police detective Steve Lohse. Detective Lohse testified that LaMere voluntarily gave a statement to Lohse after LaMere's arrest. According to Lohse, LaMere stated that he got in a fight with Brownlee and Brownlee pulled a gun on LaMere. LaMere took the gun away from Brownlee and put it in a truck. LaMere also stated to police that Brownlee pulled a knife on LaMere and that

4

LaMere took the knife away from Brownlee and stabbed him with the knife. When asked what he had done with the knife after stabbing Brownlee, LaMere told police that he laid the knife down next to "the guy." No gun was ever located by the police during the investigation nor was any knife found next to the victim. The State presented evidence that LaMere acted calm and respectful to the police at the time of his arrest. LaMere did not complain of nor did the police observe any physical injury to LaMere consistent with someone involved in a fight.

¶12   At the close of the State's case, LaMere moved the District Court for a directed verdict arguing that the State failed to prove that LaMere killed Brownlee while acting under extreme mental or emotional stress for which there is a reasonable explanation or excuse. The District Court denied the motion articulating two independent rationales. First, the District Court expressed the view that the State cannot be required to prove a mitigating factor. Second, the District Court found that sufficient evidence had been presented during the State's case to defeat a motion for directed verdict citing the prior statement of Colwell that LaMere and Brownlee were "flailing at each other or however it was stated" and the testimony of Detective Lohse who testified that LaMere told Lohse after LaMere's arrest that the victim pulled a gun and a knife on LaMere at the time of the stabbing incident.

**STANDARD OF REVIEW**

¶13   A denial of a motion for a directed verdict is within the sound discretion of the trial court. *State v. Blackcrow*, 1999 MT 44, ¶ 18, 293 Mont. 374, ¶ 18, 975 P.2d 1253, ¶ 18 (citation omitted). A district court's denial of a motion to dismiss based on insufficiency of

5

the evidence is reviewed for an abuse of discretion. *State v. Miller*, 1998 MT 177, ¶ 21, 290 Mont. 97, ¶ 21, 966 P.2d 721, ¶ 21. In reviewing the sufficiency of the evidence, this Court determines whether, upon viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Miller*, ¶ 21.

## DISCUSSION

¶14 Did the District Court abuse its discretion when it denied LaMere's motion for a directed verdict of acquittal?

¶15 Following reversal of LaMere's first conviction, the State charged LaMere with mitigated deliberate homicide pursuant to § 45-5-103(1), MCA (1997). The statute provides in pertinent part:

> A person commits the offense of mitigated deliberate homicide when the person purposely or knowingly causes the death of another human being but does so under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse. The reasonableness of the explanation or excuse must be determined from the viewpoint of a reasonable person in the actor's situation.

At the close of the State's case at trial, LaMere moved for a directed verdict of acquittal on the grounds the State failed to prove the mitigation element beyond a reasonable doubt. In a criminal case, a trial court is authorized to direct a verdict of acquittal where there is insufficient evidence, as a matter of law, to support a conviction. See § 46-16-403, MCA.

¶16 As noted above, the District Court articulated two reasons for denial of LaMere's motion for directed verdict. The State concedes and we agree that the District Court

6

erroneously concluded that the State cannot be required to prove a mitigating factor. It is well established that when the State charges an offense, the State assumes the burden of proving each and every element of the offense. *State v. Hegg*, 1998 MT 100, ¶ 13, 288 Mont. 254, ¶ 13, 956 P.2d 754, ¶ 13 (citing *State v. Fuller* (1994), 226 Mont. 420, 422, 880 P.2d 1340, 1342). Therefore, when the State charges the offense of mitigated deliberate homicide, the State must prove, beyond a reasonable doubt, every element of mitigated deliberate homicide, including the mitigation element. In contrast, when a defendant asserts mitigating circumstances as an affirmative defense to a charge of deliberate homicide, the defendant must prove by a preponderance of the evidence that the defendant acted under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse. *See* § 45-5-103(2), MCA (1997).

¶17 We turn now to the second reason offered by the District Court for denial of LaMere's motion for directed verdict. The District Court referred to evidence elicited during the presentation of the State's case that the District Court found sufficient to defeat a motion for directed verdict justifying submission of the case to the jury. Specifically, the District Court cited to the prior taped statement of witness Colwell that LaMere and Brownlee were "flailing at each other or however it was stated" together with the testimony of Detective Lohse regarding LaMere's statement to Lohse that Brownlee pulled a gun and a knife on LaMere at the time of the stabbing incident.

¶18 Established rules of law guide our analysis in considering whether the District Court abused its discretion in denying the motion for directed verdict.

7

¶19    A district court should grant a motion for directed verdict of acquittal only when there is no evidence *whatsoever* to support a guilty verdict. *State v. Hocevar*, 2000 MT 157, ¶ 118, 300 Mont. 167, ¶ 118, 7 P.3d 329, ¶ 118 (emphasis added) (citing *State v. Campbell* (1996), 278 Mont. 236, 246, 924 P.2d 1304, 1310-11 (citation omitted)).  A defendant is entitled to an acquittal "if reasonable men could not conclude from the evidence taken in a light most favorable to the prosecution that guilt has been proven beyond a reasonable doubt." *Hocevar*, ¶ 118 (citing *State v. Bromgard* (1993), 261 Mont. 291, 293, 862 P.2d 1140, 1141 (citation omitted)).

¶20    LaMere argues that viewing the evidence in the light most favorable to the prosecution compels a conclusion that the State successfully impeached LaMere's credibility regarding LaMere's statements to the police about the victim pulling a gun and a knife on LaMere.  As a consequence, LaMere contends that his statements to police have no evidentiary value in proving that LaMere acted under extreme mental or emotional stress for which there is a reasonable explanation or excuse.  We reject this argument.  Viewing evidence in a light most favorable to the prosecution requires that we view the evidence and all inferences to be drawn therefrom in the strongest light possible which supports establishment of the State's case.  Moreover, when we  review evidence in a light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we are obligated to make application of this familiar standard in a manner that "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw inferences from basic facts to

8

ultimate facts." *Porter v. State*, 2002 MT 319, ¶ 19, 313 Mont. 149, ¶ 19, 60 P.3d 951, ¶ 19 (citing *State v. Brown* (1989), 239 Mont. 453, 457, 781 P.2d 281, 284). LaMere advances an erroneous construction of this familiar standard that would preclude jury consideration of this case in express contravention of the proper application of the standard as mandated in *Porter*.

¶21    When considering whether the State presented sufficient evidence of the mitigation element in a mitigated deliberate homicide case, viewing the evidence in a light most favorable to the prosecution requires that we accord the strongest possible weight that a fact finder could ascribe to the mitigation evidence to sustain a conviction. While we recognize that the evidence is in conflict, the record nonetheless reflects that specific evidence of mitigation was presented to the jury during the State's case. That evidence consists of Colwell's statement to police taken one month after the stabbing, LaMere's voluntary statement to police after his arrest, and Julie Jorgensen's testimony that both LaMere and the victim appeared angry and were circling each other "like men sometimes do before they get into a fight." Viewing such evidence in a light most favorable to the prosecution, a jury could find that LaMere and the victim were fighting, that the victim pulled a gun and a knife on LaMere and that LaMere stabbed the victim with his own knife. Assuming, therefore, that a jury might find such facts to be true, we must then determine whether any rational trier of fact could have found beyond a reasonable doubt that LaMere acted under extreme mental or emotional stress for which there is a reasonable explanation or excuse. On this record and applying the reasonable person standard, we hold that a rational trier of fact could find,

9

beyond a reasonable doubt, that a person engaged in a fight and subjected to a threat from another who is wielding a gun or a knife may experience and act under extreme mental or emotional stress for which there is a reasonable explanation or excuse.

¶22 Whether the trial court or this Court would have viewed the evidence or found the facts differently from the jury is not the appropriate inquiry. What is dispositive is the existence of evidence from which a jury could have found the mitigation element proven beyond a reasonable doubt. If the evidence is properly before the jury, then "resolving conflicts in the evidence, judging the credibility of the witnesses, and finding the facts are acts uniquely within the province of the jury." *Moore v. Imperial Hotels, Corp.*, 1998 MT 248, ¶ 18, 291 Mont. 164, ¶ 18, 967 P.2d 382, ¶ 18 (citation omitted).

¶23 In further support of his position, LaMere argues that the easiest way to understand what constitutes sufficient evidence of mitigated deliberate homicide is to review what this Court has found *not* to be adequate evidence of mitigation. LaMere cites to a number of cases in which this Court found the evidence insufficient either to warrant a mitigating instruction or to meet the defendant's burden in proving mitigation. *See State v. Howell*, 1998 MT 20, 287 Mont. 268, 954 P.2d 1102; *State v. Williams* (1993), 262 Mont. 530, 866 P.2d 1099; *State v. Scarborough*, 2000 MT 301, 302 Mont. 350, 14 P.3d 1202; and *State v. Byers* (1993), 261 Mont. 17, 861 P.2d 860. To the extent that these cases address different factual circumstances, they provide little guidance to our consideration here. We reiterate that when reviewing a trial court's denial of a directed verdict based on insufficiency of the evidence, this Court has consistently followed the standard of viewing the evidence in a light

10

most favorable to the prosecution to determine if any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, when the State charges mitigated deliberate homicide and bears the burden to prove the mitigation element, we will apply the foregoing familiar standard and we decline LaMere's invitation to adopt some other or different standard. LaMere states that in *Miller*, we set the quantum of evidence required for a conviction for mitigated deliberate homicide. Although this Court concluded in *Miller* that the State had presented sufficient evidence to convict the defendant of mitigated deliberate homicide, it does not follow that different or even less evidence than that presented by the State in *Miller* is necessarily insufficient for a jury conviction in other cases. Each case must be reviewed on its own facts. Our decision today does not conflict with our decision in *Miller*.

¶24  Based on well established law governing review of trial court rulings on motions for directed verdict, we conclude that the District Court did not abuse its discretion when it denied LaMere's motion for a directed verdict of acquittal.

¶25  Our holding in this case is also grounded in our determined view that courts will exercise the greatest self-restraint in interfering with the constitutionally-mandated process of jury decision. *Cameron v. Mercer*, 1998 MT 134, ¶ 8, 289 Mont. 172, ¶ 8, 960 P.2d 302, ¶ 8 (citing *Ryan v. City of Bozeman* (1996), 279 Mont. 507, 510, 928 P.2d 228, 230). A district court does not consider a motion for directed verdict of acquittal in a vacuum. In addition to the other important considerations that we have discussed above, the trial court must be mindful of the principle of deference for jury decision. We recognize that trial court

11

judges routinely engage in the laudable task of informing prospective jurors about the importance of the jury system to the preservation of a free society and the vital role played by individual jurors in the administration of justice. The proper deference for jury decision gives substance to such words.

¶26    While each case must, as Justice Black stated, turn on its own peculiar circumstances, we believe that a proper deference for jury decision serves to maximize the beneficial application of the collective wisdom and life experience of twelve citizens to a search for just resolution of the important matters brought before our courts. When any court intrudes into the exclusive province of the jury, such action "creates a bench supremacy which saps the vitality of jury verdicts." *Nelson v. Hartman* (1982), 199 Mont. 295, 300, 648 P.2d 1176, 1179. Against such action, we must stand resolute. Accordingly, we have held in civil cases that, unless there is an absence of any credible evidence in support of a verdict, a motion for a directed verdict is not properly granted. *Cameron*, ¶ 8 (citing *Ryan*, 279 Mont. at 510, 928 P.2d at 230). We take a no less vigorous stance against interference with the jury process in criminal cases. Therefore, we will not disturb the decision of the district court when it denies a motion for directed verdict of acquittal and sends a case to the jury unless there is no evidence whatsoever to support a guilty verdict. *Hocevar*, ¶ 118.

¶27    Affirmed.

/S/ BLAIR JONES
District Judge Blair Jones
sitting by designation for Justice Leaphart

12

We concur:


/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ TERRY N. TRIEWEILER
/S/ PATRICIA COTTER

Justice Jim Rice dissenting.

¶28 I dissent for the reason that the Court, in my view, fails to honor our precedent concerning similar cases of mitigated deliberate homicide.

¶29 In *State v. Heit* (1990), 242 Mont. 488, 791 P.2d 1379, Heit was charged with deliberate homicide for killing a bartender following an altercation. He requested a mitigated deliberate homicide instruction, arguing that the evidence offered at trial, similar to the facts asserted here, warranted an instruction on mitigated homicide: that the victim had said something which made Heit angry, that Heit was intoxicated, and that there had been a physical struggle between Heit and the victim over a gun. Even though the burden of proof for establishing an affirmative defense was preponderance of the evidence, we held that Heit was not entitled to an instruction on mitigated deliberate homicide because this evidence was not sufficient to permit the jury to rationally find that he had acted with "extreme mental or emotional stress for which there is reasonable explanation or excuse."

¶30 In *State v. Williams* (1993), 262 Mont. 530, 866 P.2d 1099, *overruled on other grounds by State v. Good*, 2002 MT 59, 309 Mont. 113, 43 P.3d 948, Williams was charged with deliberate homicide for the shooting death of the victim. Williams got into a dispute over drug profits with the victim, who ordered Williams to leave his house. Evidence was introduced that Williams was angry and "kind of drunk," that the parties had argued and that both parties had drawn weapons. Williams requested a jury instruction for mitigated deliberate homicide. However, citing *Heit*, we again held that there was insufficient evidence for the jury to find that Williams had acted under extreme mental or emotional

14

stress for which there was a reasonable explanation, and therefore, we concluded that the defendant had not met his burden of establishing mitigation by a preponderance of the evidence, and was not entitled to the instruction.

¶31 In *State v. Howell,* 1998 MT 20, 287 Mont. 268, 954 P.2d 1102, trial evidence indicated that when Howell heard his roommate, a disabled veteran, "screaming for help," he rushed to his aid, finding an assailant had his roommate on the floor, beating him. The evidence indicated that Howell was aware of the assailant's reputation as an aggressive drunk, was afraid of the assailant, and was fearful for his roommate's safety. He first attempted to shove the assailant off his roommate, only to be knocked against the wall by the assailant. Howell, also intoxicated, then retreated to another room, and returned with a knife. At that point, the assailant again attacked Howell, who then killed the assailant. Howell was charged with deliberate homicide, and sought an instruction for mitigated deliberate homicide. Despite the menagerie of fear, intoxication, altercation and weaponry involved in the case, we held, citing *Williams*, that the defendant had not met the burden of demonstrating sufficient evidence that he had acted under extreme stress for which there was a reasonable explanation.

¶32 The Court distinguishes this precedent by offering that "these cases address different factual circumstances" and, therefore, "provide little guidance." *See* ¶ 23. However, I cannot dismiss the cases so easily. While every case has some factual differences, we have established in these decisions a consistent principle that a defendant must demonstrate more than anger or fear arising from an intoxication-related altercation involving a weapon in

order to establish, by a preponderance of the evidence, "extreme mental or emotional stress for which there is a reasonable explanation." However, in contrast to these holdings, the Court holds that the alcohol-related incident here provides sufficient evidence from which "a jury could find that LaMere and the victim were fighting, that the victim pulled a gun and a knife on LaMere and that LaMere stabbed the victim with his own knife," and therefore, the State has met its burden to establish mitigation beyond a reasonable doubt.

¶33     In fundamental fairness, "what is good for the goose should be good for the gander." Given our holdings in *Heit*, *Williams*, and *Howell*, wherein we held that the defendants had not met their lesser evidentiary burden on facts similar to those here, I cannot justify the conclusion that the State met its burden in this case. I would reverse the District Court's denial of LaMere's motion for a directed verdict.


/S/ JIM RICE


Chief Justice Karla M. Gray concurs in the foregoing dissent of Justice Rice.


/S/ KARLA M. GRAY