**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CLIFFORD LAMERE,
        *Plaintiff-Appellant,*

v.

WILLIAM SLAUGHTER, Director,
Department of Corrections; MIKE
MAHONEY, Warden, Montana State
Prison,

        *Defendants-Appellees.*

No. 05-35588

D.C. No.
CV-04-00032-CSO

OPINION

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted
May 4, 2006—Portland, Oregon

Filed August 8, 2006

Before: A. Wallace Tashima and William A. Fletcher,
Circuit Judges, and Louis H. Pollak,* Senior District Judge.

Opinion by Judge William A. Fletcher

---

*The Honorable Louis H. Pollak, Senior United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

## COUNSEL

Chad Wright, Helena, Montana, for the appellant.

Ilka Becker, Office of the Montana Attorney General, Helena, Montana, for the appellees.

## OPINION

W. FLETCHER, Circuit Judge:

Petitioner Clifford LaMere seeks a writ of habeas corpus under 28 U.S.C. § 2254. In his state court trial, LaMere unsuccessfully moved for a directed verdict of acquittal at the close of the State's case-in-chief, as he was permitted to do under Montana law. He contends that he is entitled to habeas relief under *In re Winship*, 397 U.S. 358 (1970), and *Jackson v. Virginia*, 443 U.S. 307 (1979), because the State failed to introduce sufficient evidence of his guilt during its case-in-chief. We conclude that *Winship* and *Jackson* do not apply to a motion for directed verdict of acquittal at the close of the State's case-in-chief. We therefore affirm the district court's denial of the writ.

### I. Facts and Proceedings Below

On March 13, 1997, petitioner LaMere killed Steven Brownlee in an alley behind Brownlee's apartment in Great

Falls, Montana. LaMere admitted that he killed Brownlee but disputed the circumstances of the killing.

LaMere had two jury trials in Montana state court. During the first trial, LaMere, a Native American, argued that he had acted in self defense. The jury acquitted LaMere of deliberate homicide, but convicted him of mitigated deliberate homicide. The Montana Supreme Court reversed this conviction, holding that the court clerk had violated Mont. Code Ann. § 3-15-505 (1997) by summoning jurors by telephone, with the result that Native Americans were under-represented in the venire. *State v. LaMere*, 2 P.3d 204 (Mont. 2000).

Because LaMere had been acquitted of deliberate homicide in his first trial, the State charged only mitigated deliberate homicide on retrial. At the time of the second trial, mitigated deliberate homicide was defined under Montana law as deliberate homicide committed "under the influence of extreme mental or emotional stress for which there is a reasonable explanation or excuse." Mont. Code Ann. § 45-5-103(1) (1997).

At the second trial, several witnesses provided testimony relevant to "extreme mental or emotional stress for which there is reasonable explanation or excuse" during the State's case-in-chief. Julie Jorgensen, a neighbor, testified that she had driven her car past LaMere and Brownlee before the physical altercation began. She testified that the two men "looked like they were angry," and that "they started to like walk around each other like men sometimes do before they get into a fight."

Another neighbor, Lawrence Colwell, testified that he saw LaMere repeatedly strike Brownlee with his fists and that Brownlee "never struck a blow." Colwell testified that Brownlee fell to the ground twice, and that LaMere hit and kicked Brownlee while he was on the ground. Colwell testified that he never saw a weapon. On cross-examination, Col-

well admitted that he had "probably" told Great Falls police detective Dan Ingersoll in a statement tape-recorded a month after the killing that both men were striking blows — "that they were just kind of halfheartedly thumping each other."

Detective Ingersoll testified that Colwell had said in his tape-recorded statement that "he had observed two individuals in the alley fighting." According to Ingersoll, Colwell "described it as a couple of drunks having a disagreement," and "said they were kind of fighting each other, wrestling around." A toxicologist testified that Brownlee had a significant level of alcohol in his blood at the time of his death.

Great Falls police detective Steve Lohse testified that LaMere had made a voluntary statement immediately after his arrest. Lohse testified that LaMere had told him that "the guy pulled a gun and that they fought and wrestled. He got the gun away and then he did something, they put the gun in a truck and then the guy pulled a knife. And then he said he got the knife away from the guy and stabbed the guy."

At the close of the State's case-in-chief, LaMere moved for a directed verdict of acquittal. He contended that the State had the burden under state law of proving beyond a reasonable doubt that he had been acting under "extreme mental or emotional stress," and that the State had not carried its burden. The state trial court denied the motion. After the denial of his motion, LaMere put on his evidence, consisting primarily of LaMere's own testimony, as well as testimony by local bartenders describing Brownlee's aggressive behavior when he became intoxicated.

The second jury convicted LaMere of mitigated deliberate homicide. LaMere appealed to the Montana Supreme Court, contending, inter alia, that the trial court should have granted his motion for a directed verdict under *In re Winship*. The Montana Supreme Court held under state law that when the State charged mitigated deliberate homicide rather than delib-

erate homicide, the State rather than the defendant had the burden of proving "extreme mental or emotional stress" beyond a reasonable doubt. *State v. LaMere*, 67 P.3d 192, 195-96 (Mont. 2003). Applying state law and relying on the testimony described above, the Montana Supreme Court held that the trial court did not abuse its discretion in denying LaMere's motion for a directed verdict of acquittal. *Id.* at 197. The Montana Supreme Court did not mention *Winship* or *Jackson*.

LaMere then sought a writ of habeas corpus under 28 U.S.C. § 2254. He contended in the district court that because Montana allows a criminal defendant to move for a directed verdict of acquittal at the close of the State's case-in-chief, he was entitled to habeas relief under *Winship* and *Jackson* based on an analysis of the sufficiency of the State's evidence of "extreme mental or emotional stress" presented during its case-in-chief. Alternatively, he contended that he was entitled to relief under *Winship* and *Jackson* based on an analysis of the sufficiency of all of the evidence presented at trial. The district court rejected both contentions and denied the writ.

The district court granted a certificate of appealability ("COA") on the following question: "whether the federal court's review [of the sufficiency of the evidence] must be confined to the State's case-in-chief or, alternatively stated, whether the federal court may also consider evidence presented by LaMere in his case-in-chief."

## II.   Standard of Review

We review de novo a district court's decision denying a 28 U.S.C. § 2254 petition. *See Luna v. Cambra*, 306 F.3d 954, 959 (9th Cir. 2002), *as amended* 311 F.3d 928 (9th Cir. 2002). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may only grant habeas relief if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law

as determined by the United States Supreme Court. 28 U.S.C. §2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 407-09 (2000).

## III.    Analysis

LaMere contends that when reviewing the sufficiency of the evidence under *Winship* and *Jackson*, the district court should have looked only to the evidence in the record at the time he made his motion for a directed verdict of acquittal. LaMere does not argue that there is a free-standing federal due process right to a directed verdict of acquittal at the close of the State's case-in-chief, or that there is a free-standing right to federal habeas review of the sufficiency of the evidence at that point in the trial. Rather, LaMere argues that because Montana has authorized a motion for a directed verdict of acquittal at the conclusion of the State's case-in-chief, he is entitled under *Winship* and *Jackson* to federal habeas corpus review of the sufficiency of the evidence at the time he makes that motion.

[1] If LaMere is correct, in all cases where defendants have made mid-trial motions for directed verdicts of acquittal, a federal habeas court would be required under *Winship* and *Jackson* to evaluate the sufficiency of the evidence not only based on all of the evidence presented at trial, but also based on the evidence presented by the State in its case-in-chief. We are unable to find any United States Supreme Court decision supporting LaMere's contention. Motions for directed verdict of acquittal have long been available in criminal cases, in both federal and state court. *See , e.g.*, *United States v. Calderon*, 348 U.S. 160, 164 & n.1 (1954) (discussing federal procedure); *Smith v. Massachusetts*, 543 U.S. 462, 472 (2005) (discussing state procedures). But the United States Supreme Court has never suggested, let alone held, that in a case in which both sides have presented evidence a federal habeas court should confine its analysis to the evidence presented by the State during its case-in-chief. For example, in *Jackson*, the

case upon which LaMere principally relies, the Court evaluated all of the evidence presented in the case, not merely the evidence presented by the State. 443 U.S. at 324-26.

**[2]** So far as we are aware, the Seventh Circuit is the only court of appeals to have addressed a contention similar to LaMere's. *See Hernandez v. Cowan*, 200 F.3d 995 (7th Cir. 2000). In rejecting that contention, the court wrote:

> No doubt the denial [of the motion for a directed verdict] was erroneous under state law, for no reasonable jury could have convicted Hernandez on Cruz's evidence alone; but we cannot find any basis in federal constitutional law as laid down by the U.S. Supreme Court . . . for the proposition that due process is violated by the denial of a motion to acquit in the middle of the case.

*Id.* at 998. We agree with the Seventh Circuit, and we hold that the district court correctly concluded that it should evaluate the sufficiency of the evidence against LaMere under *Winship* and *Jackson* based on all of the evidence presented in the case.

We will assume arguendo that the COA includes the question of whether the district court properly concluded, based on all of the evidence presented in the case, that *Winship* and *Jackson* were satisfied. We hold that the district court properly concluded that "a rational trier of fact could have found proof of guilt beyond a reasonable doubt," *Jackson*, 443 U.S. at 324, that LaMere did kill Brownlee while "under the influence of extreme mental or emotional stress for which there [wa]s a reasonable explanation or excuse." Mont. Code Ann. § 45-5-103(1) (1997).

## Conclusion

**[3]** We hold that in deciding whether to grant a writ of habeas corpus under 28 U.S.C. § 2254, a federal court evalu-

ating the evidence under *In re Winship* and *Jackson v. Virginia* should take into consideration all of the evidence presented at trial. Based on all of the evidence presented in this case, the district court properly denied the writ.

**AFFIRMED.**