No. 13547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

THE STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

RANDALL CRAIG BAUGH,

        Defendant and Appellant.

---

Appeal from: District court of the Eleventh Judicial
        District,
        Honorable Robert Sykes, Judge presiding.

Counsel of Record:

    For Appellant:

    Donald L. Shaffer argued, Libby, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena,
        Montana
        Allen B. Chronister argued, Assistant Attorney
        General, Helena, Montana
        William A. Douglas argued, County Attorney,
        Libby, Montana

---

        Submitted: September 29, 1977

        Decided: NOV 1 5 1977

Filed: NUV 1 5 1977

_Thomas J. Kearney_
                       Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

In August 1975, the body of David Locca was discovered in an isolated area of Lincoln County, Montana. Sometime after that, warrants of arrest were issued for Randall Craig Baugh, defendant herein, and William Beechman. William Beechman has never been found. In November 1975, Randall Craig Baugh turned himself in to the authorities. Defendant was arraigned and plead not guilty to the charge of deliberate homicide in the District Court, Lincoln County.

Pretrial motions were made by the state and the defense. Among these was a motion by the state to amend the Information as to the alleged date of the crime and motions for discovery made by defendant. Two prospective witnesses were arrested by the state for the deliberate homicide of David Locca. One, Randy Jacobsen, was arrested before the defense could talk to him and held over night. It was a week after this incident that Jacobsen consented to an interview by the defense. The other witness, William Phillip Stuart, was arrested in New Mexico and then released. The defense requested the court to help locate Stuart.

The court ordered the Lincoln County sheriff's office to cooperate with the Lincoln County public defender's office in locating Stuart because the Lincoln County public defender has no budget or personnel to pursue such matters. The Lincoln County sheriff's office located Stuart in New Mexico, did not inform the public defender, but instead informed the Lincoln County attorney, who then flew to New Mexico, interviewed Stuart, arrested him, gave him a polygraph examination, released him,

flew back to Montana, and then informed the defense and the court of the whereabouts of Stuart.

Trial was had in Lincoln County, Montana, starting on May 17, 1976. The jury was interviewed prior to voir dire by Hon. Robert C. Sykes, because of a controversy that existed at that existed at that time between the Lincoln County sheriff and the county attorney, William Douglas. Evidence began on May 18, 1976.

On May 21, 1976, the defense made two motions for a mistrial. The first motion was made because defendant had been brought to court on the morning of May 21 in handcuffs, and those handcuffs were unlocked in front of the jury before the trial commenced. The reason for the handcuffs, according to the deputy sheriff, was the defendant's bickering.

The other motion was because a juror, Sandy Kolar, had evidence of the matter acquired outside of the trial. In fact, Kolar was present with Douglas when videotape of the exhumation of the body of David Tocca had been shown. Douglas was fully aware Kolar was present at this videotape showing.

Both motions for mistrial were denied; Kolar was excused and an alternate juror was seated. A further motion for mistrial was made and a motion for a directed verdict.

Defendant was found guilty and sentenced to 75 years in the Montana state prison. Defendant appeals from the judgment, and presents four issues on appeal:

1. Whether a defendant charged with deliberate homicide has a right to a jury instruction on mitigated deliberate homicide?

2. Whether the arrest of potential defense witnesses deprives a defendant of due process and a fair trial?

3. Whether it is reversible error for an accused to appear in handcuffs before a jury?

4. Whether the replacing of a juror who is a personal friend of the prosecutor and has personal knowledge of evidence of the case is error, if replaced by an alternate juror prior to the time the jury goes into deliberations?

Issue 1. Is a defendant charged with deliberate homicide entitled to a jury instruction on mitigated deliberate homicide even though no evidence is presented on that issue. Under section 94-5-103, R.C.M. 1947, deliberate homicide is mitigated if committed "under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." As ascertained from the record, defendant's theory is that he did not kill the deceased and had no knowledge of who did. At trial, defendant's attorney, in his opening statement stated:

"* * * Now, Randy will take the stand and I will tell
you essentially what he will say. He has no knowledge
or information as to how David Locca met his death, he
could speculate and that is all it would be is pure
speculation, he doesn't know. * * *"

This Court reaffirmed the Montana rule on the requirement for an instruction on mitigated deliberate homicide in State v. Buckley, _____ Mont._____, 557 P.2d 283, 33 St.Rep. 1204, 1207 (1976) and set out this test:

"* * * the district court's instructions must cover
every issue or theory having support in the evidence,
and the inquiry of the district court must only be
whether or not any evidence exists in the record to
warrant an instruction on mitigated deliberate homicide."
557 P.2d 285.

The United States Supreme Court in Keeble v. United States, 412 U.S. 205, 93 S.Ct. 1993, 36 L ed 2d 844 (1973), stated that the defendant is entitled to instruction on a lesser included offense, if evidence would permit the jury rationally to find him guilty of the lesser offense and acquit him of the greater.

In the instant case there was no evidence in the record to show mitigation as required by section 94-5-103. In fact, defendant's theory throughout the trial was that he did not murder the victim. In State v. McDonald, 51 Mont. 1, 16, 149 P. 279 (1915), it was said:

> "* * * In many instances, however, the evidence is such as to show that the defendant is either guilty of the offense charged or is entitled to an acquittal. In such cases the court may not be put in error for refusing or failing to instruct as to the lower degree or the included offense."

This rationale applies to the instant case, and the trial court acted properly in not giving the alternate instruction on mitigated homicide.

Issue 2, concerns the county attorney's arresting and holding witnesses Jacobsen and Stuart and after questioning releasing them. Defendant alleges this prejudicially impaired the effectiveness of defense counsel's efforts to interview these same witnesses. This Court in State v. Gangner, 73 Mont. 187, 194, 235 P. 703 (1925) stated:

> "Whatever the popular notion may be, it is neither the duty nor the right of the state, acting through its public officers, to secure the conviction of one of its citizens by any available means, fair or foul. The Constitution guarantees to everyone accused of crime a fair and impartial trial * * * and the state had no more right to deny defendant's counsel access to a witness material to the defense then it would have had to secrete the witness to prevent the defendant using him * * *."

In the instant case while defense counsel was able to talk to these witnesses, defendant contends the prosecution so intimidated them that the effectiveness of the interviews was substantially diminished. Yet, there is no showing how the prosecution intimidated these witnesses or that it instructed them not to cooperate with the defense attorney, or that it otherwise attempted to directly impede the effectiveness of defense counsel. The record shows that at the time these witnesses were interviewed and arrested, they were potential defendants in this case. There is extensive discussion in the record concerning these witnesses. It is clear from that discussion the court took every action possible to provide the defense access to them.

While defense counsel may have had difficulty in locating and interviewing witnesses Jacobsen and Stuart, there is nothing in the record to show lack of due process, which could be attributed to the state's investigatory procedure.

Issue 3. On the morning of May 21, 1975, defendant was escorted into the courtroom in handcuffs by a deputy sheriff. Apparently the handcuffs were removed once defendant was in the courtroom. Counsel for defendant contends defendant having been seen by the jury in handcuffs is reversible error. When the handcuff incident occurred, defense counsel moved in chambers for a mistrial and was denied. Ruling, however, on the mistrial was reserved in order to give the court opportunity to question the jurors after the verdict was in to determine whether the jurors were influenced by the handcuff incident. This was done after the jury reached its verdict, but before it was announced. This exchange took place between the court and jurors:

"THE COURT: Now before presenting this verdict to me, I would like to ask the jurors some questions. Did any of the jury observe the defendant during the course of the trial being brought into the courtroom in handcuffs?

"THE JURY: Yes sir.

"THE COURT: Now, did that in any way affect any of you in your deliberations as to his guilt or innocence?

"THE JURY: No.

"THE COURT: It did not, any of you?

"THE JURY: No."

The basic principles of the criminal justice system is that an accused, whatever his past record, is presumed innocent until proven guilty beyond a reasonable doubt. Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L ed 481 (1895).

It follows that the accused is also entitled to the indicia of innocence. In the presence of the jury, he is ordinarily entitled to be relieved of handcuffs, or other restraints, so he will not be marked as an obviously bad person or to suggest that the fact of his guilt is a foregone conclusion. United States v. Samuel, 431 F.2d 610, 614 (4th Cir. 1970).

The Montana case closest in point is State v. Bentley, 155 Mont. 383, 472 P.2d 864 (1970). There this Court held the defendant was not prejudiced by having to wear jail clothing during the trial. However, the Ninth Circuit Court in Bentley v. Crist, 469 F.2d 854 (1972), reversed the Montana holding and held that compelling the accused to wear prison clothing may deny him the presumption of innocence.

In State v. Sawyer, 60 Wash.2d 83, 371 P.2d 932 (1962), the defendant was handcuffed in the courtroom upon adjournment, much like the instant case wherein the defendant was brought into court handcuffed and then unlocked. The court found no

- 7 -

prejudicial error. Sawyer relied upon Way v. United States, 285 F.2d 253, 254, (10th Cir. 1960) where, as here, the defendant was brought into trial handcuffed, without order of the court, and the handcuffs were then removed. In Way the court held that "in the absence of an indication of prejudicial consequences, such an occurrence does not warrant the granting of a new trial." It is incumbent upon defendant to demonstrate actual prejudice, which he has not done here. The Ninth Circuit in United States v. Kress, 451 F.2d 576 (1971), held that an appearance before the jury during trial by a defendant in shackles is not inherently prejudicial.

The majority rule is that, absent unusual circumstances, a prisoner brought into court for trial is entitled to appear free from all bonds or shackles, this right being an important component of a fair and impartial trial. However, in State v. Jones, 130 N.J.Super. 596, 328 A.2d 41 (1974), the court held defendant's right to be free of shackles during trial need not be extended to the right to be free of shackles while being taken back and forth between the courthouse and the jail. Most courts now agree with Sawyer that a defendant is not denied a fair trial and is not entitled to a mistrial solely because he was momentarily and inadvertently seen in handcuffs by jury members.

In the instant case counsel for defendant admits the jury was well aware of the fact defendant was in custody and not free on bail. There is no indication this occurrence was prejudicial. In the absence of an indication of prejudicial consequences, such an occurrence does not warrant the granting of a new trial.

Issue 4. On May 21, 1976, five days after the trial commenced it came to the court's attention that juror Kolar, along with the county attorney and his wife had, several months prior to trial, viewed a videotape of the exhumation of the deceased. This fact was unknown to the court and counsel for the defendant prior to that time. It was immediately apparent to the court that:

"* * * under these circumstances, Miss Kolar was not qualified nor should have been made part of this jury unless this was known to defendant's attorney prior to this time."

Prior to determining a course of action, the court called juror Kolar into chambers and in the presence of counsel and defendant, the following transpired:

"THE COURT: So would you have the bailiff ask her to come in here. The last time I asked, I think I asked Mrs. Hunt to come in here and I scared the tar out of her. Well, I don't want to scare the tar out of you. It has just come to my attention and confirmed by Mr. Douglas that prior to the time of this trial, in his presence, you did observe and see the videotaping that had been conducted of the exhumation of the body.

"MISS KOLAR: Yes.

"THE COURT: Well, now it is my opinion that that should have in itself disqualified you from participating in this trial, because you have observed part of the process of the interrogation and investigation of this case and that could affect your deliberations possibly and this information, not being known to Mr. Shaffer prevented him from possibly exercising the right of a peremptory challenge that he might have exercised or might not have. Now, what I am concerned with is whether or not during the course of this trial have you at any time discussed this fact with any other member of the jury?

"MISS KOLAR: No, I have not.

"THE COURT: And there hasn't been any juror that knows from you that you saw any of this videotaping or anything?

"MISS KOLAR: No."

It was further developed upon questioning by defense counsel that juror Kolar was a friend of the county attorney, and "more

so" of his wife and the videotape was viewed prior to going to see a movie. The court then further questioned juror Kolar:

> "THE COURT: Well, just one thing. As it pertained to your participating on the jury and in the voir dire, you felt that viewing that had not in any way affected your opinion as to the guilt or innocence of Mr. Baugh?
>
> "MISS KOLAR: No. sir.
>
> "THE COURT: And you felt that since this was just a viewing of the exhumation that that in no way would affect your deliberations?
>
> "MISS KOLAR: No, it would not.
>
> "THE COURT: Now, did you feel that your friendship with Mrs. Douglas and your knowledge of Mr. Douglas would in any way affect your deliberations?
>
> MISS KOLAR: No, sir."

The court then excused juror Kolar from further service and even though this information "should have been disclosed by Mr. Douglas during the voir dire" the court felt the trial could proceed by seating one of the alternate jurors. The court's finding that no prejudice had resulted is clear from the denial of defendant's motion for a mistrial.

In open court, the jury, with the alternate sitting for Kolar, was admonished:

> "THE COURT: * * * Mr. Smith, at this time, you should take the jury box and in so doing, although the Court knows or makes this assumption, the reasons for Miss Kolar's not participating in any further proceedings should not and will not affect the rest of you jurors participating in this case and that we are proceeding with the trial. That was one of the reasons we have alternate jurors if certain circumstances do arise. Now, at this time, having reconvened, Mr. Douglas, call your next witness."

At the conclusion of the trial, after the jury had reached its verdict, but before that verdict was announced, the court questioned the jury:

"THE COURT: During the time that Miss Kolar was a member of the jury, did she discuss with any of you any of the evidence on the trial?

"THE JURY: No.

"THE COURT: Let the record show that all of the jury answer no to that question. That the previous question, they stated that the bringing of the defendant in handcuffs into the courtroom in their presence did not affect their deliberations and the presumption of the defendant's innocence until proven guilty. Now, the fact that Miss Kolar was removed from the jury and Mr. Smith replaced her, did that in any way affect your deliberations on this case?

"THE JURY: No."

Defendant was not prejudiced by the occurrence involving juror Kolar. While serious prejudice may have arisen if juror Kolar had participated in the verdict, those problems were thus arrested by replacing her with an alternate juror and the further safeguards taken by the trial judge.

The verdict and judgment of the trial court is affirmed.

_____
/ Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices.

- 11 -