No. 80-459

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

STATE OF MONTANA,

Plaintiff and Respondent,

vs.

TERRY JOHN SCHATZ,

Defendant and Appellant.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

John L. Adams, Jr. argued, Billings, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Assistant Attorney General, Helena,
Montana
Harold Hanser, County Attorney, Billings, Montana

Submitted:  September 18, 1981
Decided: OCT 19 1981

Field: OCT 19 1981

Thomas K. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendant appeals from his conviction on three counts of robbery for which he was sentenced to 30 years, 30 years and 40 years to run consecutively. We affirm.

Defendant raises issues concerning sufficiency of the evidence, challenges evidence seized from defendant's vehicle, and questions witness identification resulting from a photographic lineup. Because of the challenges made by the defendant, we set forth a detailed description of the evidence received at trial.

On June 13, 1980, Paul Gjefle was working alone at the Laurel Kwik-Way store at approximately 10:00 a.m., when he was approached by an armed man who demanded money. When Gjefle expressed disbelief, the man struck him in the face with a pistol. Gjefle then placed money from the cash register into a paper sack. The armed robber fled on foot. Frances Campbell, a witness living near the store, noticed a man acting peculiarly and described him as running to a car identified as a red Mustang. She remembered a partial license plate number of 3-1125.

On the evening of June 17, 1980, at approximately 11:00 p.m., a single male person armed with a pistol robbed the Billings Kwik-Way store. The clerk, Eileen Yansness, gave the police a description of the suspect.

A third robbery was committed at the First Avenue Billings IGA, at about 2:00 a.m., on June 18, 1980. Minutes later a deputy sheriff in the vicinity, received a radio report of the robbery which indicated that the robber had fled north on North 22nd Street. While attempting to determine a probable get-away route, the deputy noticed a red

-2-

Mustang headed north at an unusually slow speed. The deputy began to follow. The suspect car suddenly turned, parked and turned off its lights. The deputy parked and approached the suspect vehicle. The deputy noticed a person, later determined to be the defendant, lying motionless across the front seat. The deputy ordered the defendant to remove himself from the car, whereupon the deputy noticed, in plain view, a paper sack with an IGA logo, together with a pistol and some articles of clothing which were similar to those reportedly worn by the robber. The defendant was then placed under arrest and the evidence in plain view was seized.

The following issues are raised on appeal:

1. Whether the District Court properly denied defendant's motion to suppress the evidence seized from the vehicle?

2. Whether evidence of a photographic lineup was correctly admitted at the time of trial?

3. Whether defendant should have been granted a mistrial because defendant was seen by certain jurors, leaving the courthouse, while in handcuffs?

4. Whether there was sufficient evidence to support the verdict?

Defendant contends that the arresting officer did not have probable cause to believe that the defendant, when arrested, had committed a crime. Defendant argues: "However, suspicion of an officer alone unsubstantiated by some evidence upon which to base belief that a crime is or has been committed by the suspect is not enough to establish probable cause no matter what a subsequent search may re-

veal." Defendant cites and relies upon State v. Rader (1978), 177 Mont. 252, 581 P.2d 437.

In State v. Gopher (1981), ____ Mont. ____, 631 P.2d 293, 38 St.Rep. 1078, we discarded the dictum in Rader, cast aside the former requirement of "probable cause", and adopted the "particularized suspicion" test found in United States v. Cortez (1981), ____U.S.____, 101 S.Ct. 690, 66 L.Ed.2d 621. State v. Gopher, supra, published since trial of the case at bar, disposes of the defendant's contention here.

In State v. Gopher, supra, Justice Harrison, speaking for a unanimous court, said: "It should be noted here that Officer Johnston is an experienced and knowledgeable member of the Great Falls police department, having been with the force for over twelve years. This is an important element of the Cortez analysis, which emphasizes that experienced law enforcement authorities are allowed to draw certain conclusions which laymen could not properly draw in determining if a specific vehicular stop is legally valid." 631 P.2d at 295, 38 St.Rep. at 1080.

In Gopher defendant's vehicle was stopped after the officer noticed it proceeding in an unusually slow manner, past the scene of the crime, at an early morning hour. In the instant case, Sergeant Brennan, a veteran of 9 years of experience with the Yellowstone County sheriff's office, received a radio call that an armed robbery had occurred at the First Avenue IGA store. He was informed that the suspect had fled north and west from the rear of the IGA. Approximately three minutes after receiving the radio call, Sergeant Brennan observed a small red car traveling west on 6th Avenue North at an extremely slow pace." Unlike the facts of the arrest in Gopher, Sergeant

Brennan did not have to stop defendant's vehicle. Rather defendant took evasive action by shutting off his lights and pulling over against the curb where defendant proceeded to recline motionless in the front seat of the car. Under the test adopted in State v. Gopher, supra, this experienced law enforcement officer had a "particularized suspicion" sufficient to effectuate a lawful arrest. The evidence seized was in plain view. The trial court properly denied defendant's motion to suppress.

Defendant urges error in the admission of two photographic lineups. A photographic lineup was shown to Eileen Yansness, the clerk at the Billings Kwik-Way. She looked at an array of 7 photographs and identified the defendant's photograph as being, "the best one". The other photographic lineup contained an array of 6 photographs and was shown to Paul Gjefle and Frances Campbell. Mrs. Campbell picked the defendant's photograph from the array but was not positive in her identification. Mr. Gjefle correctly selected the defendant's picture from the array. Mrs. Campbell made no in-court identification. Mr. Gjefle and Eileen Yansness made positive in-court identifications. The law enforcement officers, who showed the photographic lineups to the various witnesses, testified that photographs were selected of other persons having similar physical characteristics to the defendant. They also testified that the defendant's photograph was not indicated to those making the identification.

The question here raised was disposed of in State v. Pendergrass (1980), ___Mont.___, 615 P.2d 201, 37 St.Rep. 1370. The determining factor is whether the array is unduly suggestive. The photographic lineups in question are part

of this record and have been reviewed by the Court. We do not find them to be unduly suggestive.

Defendant contends prejudice resulted from jurors seeing defendant in handcuffs. Defendant was viewed momentarily by certain jurors when being taken from the courtroom back to confinement. The viewing took place outside the courtroom.

State v. Baugh (1977), 174 Mont. 456, 463, 571 P.2d 779, 783, dealt with the issue of jurors viewing the defendant, in court, in handcuffs. This Court there said:

> ". . . Most courts now agree with Sawyer that a defendant is not denied a fair trial and is not entitled to a mistrial solely because he was momentarily and inadvertently seen in handcuffs by jury members."

This language was quoted with approval and relied upon in State v. Pendergrass, supra. Here there was no showing of prejudice to the defendant resulting from the momentary viewing.

Defendant had contended that if physical evidence seized from defendant's car was suppressed, then there would be insufficient evidence to support the conviction. This issue has been rendered moot by our ruling that the evidence was admissible. There was sufficient evidence to create a jury issue on each count.

The judgment of the District Court is affirmed.

_____
                     Justice

-6-

We concur:

_____
Chief Justice

_____

_____

_____
Justices