JUSTICE COTTER
delivered the Opinion of the Court.
¶1 Appellant Steven Porter was convicted of criminal endangerment, a felony, in violation of § 45-5-207, MCA (1997), negligent endangerment, a misdemeanor, in violation of § 45-5-208, MCA (1997), and misdemeanor assault, in violation of § 45-5-201(1), MCA (1997), in the Twenty-First Judicial District Court, Ravalli County. Porter filed a petition for post-conviction relief, in which he alleged that several errors resulted in his conviction, and that he received ineffective *151 assistance of counsel. The District Court granted Porter’s petition with regard to his counsel’s ineffective assistance for failure to file a notice of appeal, and allowed Porter ten days in which to file an appeal. The District Court dismissed the remainder of Porter’s claims. Porter appeals his original conviction for criminal endangerment, as well as the District Court’s dismissal of the remaining claims in his petition for post-conviction relief. We affirm the judgment of the District Court.
¶2 We restate the issues on appeal as follows:
¶3 1. Was there sufficient evidence to support Porter’s conviction of criminal endangerment?
¶4 2. Was Porter denied his right to effective assistance of counsel by defense counsel’s failure to move for a mistrial?
FACTUAL AND PROCEDURAL BACKGROUND
¶5 On July 18, 1998, Steven Porter traveled to the Slate Creek Campground, located 30 miles south of Darby, Montana, intending to camp there for the night. Porter was accompanied by his brother, Jeff Porter (Jeff), Jeffs son J.C., and their friend Dustin Willoughby. At the campground, Porter encountered Randy Hill (Randy) and his family. Porter and Randy were acquaintances, as both men worked for the Selway Corporation in Stevensville, Montana.
¶6 Porter, Jeff and Willoughby drank beer while at the campground, and by the evening of July 18,1998, Porter was noticeably intoxicated. Randy returned to the campground and spoke with Porter, who was drinking beer and brandishing a rifle. At Porter’s insistence, Randy examined the rifle and shot a round off into a tree. As the evening progressed, Porter and his friends continued to drink beer, and Porter grew increasingly loud and obnoxious. Porter eventually became upset over a disagreement he had with his brother Jeff. Porter tackled Jeff, and a physical fight ensued between the two men. Willoughby broke up the fight by putting Porter in a headlock. When Willoughby released Porter, Porter grabbed his rifle and a couple of beers and walked to the road, which traversed a nearby hill.
¶7 From his vantage point on the hill, Porter verbally taunted the other campers. Porter also directed specific threats at Willoughby. In an attempt to resolve the conflict, Willoughby went up to the road to speak with Porter. The two men sat down and began to talk. At some point during their conversation, Porter became angry with Willoughby, held up his rifle, and fired approximately five shots behind Willoughby’s head. Willoughby stood up, and Porter hit Willoughby with the rifle in his face and lower back.
*152 ¶8 Willoughby returned to his campsite and warned the others campers that it was not safe for them to remain at the campground. Willoughby then hid in some nearby bushes. Porter reappeared at the campsite and spoke with Randy. Porter informed Randy that he had shot rounds off near Willoughby’s ear to scare him. Porter also told Randy that he could have killed any of the campers sitting around the campfire, as he had “beaded down” on them with his rifle. Randy understood the phrase “beaded down” to mean “take aim.”
¶9 The Respondent, State of Montana, filed an information on August 19,1998, charging Porter with two counts of felony assault, in violation of § 45-5-202(2), MCA (1997), misdemeanor assault, in violation of § 45-5-201(1), MCA (1997), and criminal endangerment, a felony, in violation of § 45-5-207, MCA (1997). Porter pled not guilty to all four charges on August 19,1998. On November 10,1998, the State filed an amended information, charging Porter with three counts of felony assault, in violation of § 45-5-202(2), MCA (1997), misdemeanor assault, in violation of § 45-5-201(1), MCA (1997), and two counts of criminal endangerment, a felony, in violation of § 45-5-207, MCA (1997). Porter pled not guilty to all charges in the amended information on November 25,1998.
¶10 The case proceeded to jury trial on December 14, 1998. At the close of the State’s case, Porter moved for a directed verdict on the three felony assault charges and the two criminal endangerment charges. The District Court granted Porter’s motion with regard to the felony assault charges, but denied the motion with regard to the charges for criminal endangerment. Porter was convicted of one count of criminal endangerment, one count of negligent endangerment, and misdemeanor assault on December 17,1998. Porter was sentenced by the District Court on February 16, 1999.
¶11 On February 7, 2000, Porter filed a petition for post-conviction relief. He later filed an amended petition for post-conviction relief on November 14, 2000. In his amended petition, Porter alleged that numerous errors resulted in his conviction, and that he received ineffective assistance of counsel. The District Court conducted a hearing on Porter’s petition on February 20,2001. On July 2,2001, the District Court issued an order, granting in part and denying in part Porter’s requested relief. The District Court found that Porter received ineffective assistance of counsel, as Porter’s counsel failed to appeal his conviction. Pursuant to Rule 5(c), M.R.App.P., the District Court granted Porter ten days in which to file an appeal. The District Court dismissed the remainder of Porter’s petition. On July 9, 2001, Porter *153 appealed his original conviction for criminal endangerment, as well as the District Court’s dismissal of the remaining claims in his petition for post-conviction relief.
STANDARD OF REVIEW
¶12 We review the sufficiency of evidence to support a jury verdict to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Bauer, 2002 MT 7, ¶ 15, 308 Mont. 99, ¶ 15, 39 P.3d 689, ¶ 15.
¶13 The correct standard of review of a district court’s denial of a petition for post-conviction relief is whether the district court’s findings of fact are clearly erroneous and whether its conclusions of law are correct. State v. Wright, 2001 MT 282, ¶ 9, 307 Mont. 349, ¶ 9, 42 P.3d 753, ¶ 9. In this regard, we note that we have in the past articulated two different standards of review in cases addressing the denial of post-conviction relief, that standard noted above and most commonly applied, and the standard of “whether substantial evidence supports the findings and conclusions of the district court.” See State v. Moorman (1996), 279 Mont. 330, 335, 928 P.2d 145, 148; Walker v. State (1993), 261 Mont. 1, 6, 862 P.2d 1, 4; and State v. Coates (1990), 241 Mont. 331, 336,786 P.2d 1182, 1185. This “substantial evidence for findings and conclusions” standard of review is incorrect and should no longer be cited as the standard of review in post-conviction relief cases. To the narrow extent that Moorman, Walker, Coates, and other “substantial evidence” cases have applied this incorrect standard of review, they are overruled.
DISCUSSION ISSUE 1
¶14 Was there sufficient evidence to support Porter’s conviction of criminal endangerment?
¶15 The elements of the offense of criminal endangerment are enumerated in § 45-5-207(1), MCA(1997), which provides, in pertinent part:
A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment.
¶16 In State v. Lambert (1996), 280 Mont. 231, 929 P.2d 846, we considered the meaning of the term “knowingly,” with regard to the offense of criminal endangerment, and concluded that “the ‘knowingly *154 element of criminal endangerment contemplates a defendant’s awareness of the high probability that the conduct in which he is engaging, whatever that conduct may be, will cause a substantial risk of death or serious bodily injury to another.” Lambert, 280 Mont. at 237, 929 P.2d at 850. Porter contends that under the Lambert definition of “knowingly,” the State failed to prove that he was aware of the high probability that his conduct on July 18,1998, would cause a substantial risk of death or serious bodily injury to other campers at the Slate Creek campground. In support of his contention, Porter cites an excerpt from Justice Leaphart’s concurring opinion in Lambert, which applied the Lambert definition of “knowingly” to a fictional situation.
¶17 Justice Leaphart’s fictional situation in Lambert contemplates three men standing in a field, each holding a rifle. Lambert, 280 Mont. at 242, 929 P.2d at 853. Jones fires in the direction of an open field. Smith fires in the direction of a grove of trees. Unbeknownst to Smith, a house sits in the grove of trees. Finally, Johnson fires in the direction of a cluster of houses, which sit before him in plain view. Lambert, 280 Mont. at 242, 929 P.2d at 853. Justice Leaphart concluded that each man was aware of his conduct, i.e., that he was shooting a rifle. However, "under the Lambert definition of “knowingly,” only Johnson would be guilty of criminal endangerment, as only Johnson’s conduct resulted in a risk of harm of which he should have been aware. Lambert, 280 Mont. at 242, 929 P.2d at 853.
¶18 As testimony from the instant case indicates that Porter fired his rifle in the opposite direction of the campsite, Porter analogizes his situation to that of the fictitious Jones, whose conduct would not have amounted to criminal endangerment under the Lambert definition of “knowingly.” However, the “facts” in Justice Leaphart’s Lambert example are clearly distinguishable from those in the case at bar. The fictitious Jones fired his rifle in an open field, presumably while sober and during the daylight hours. Porter shot his rifle at nighttime, while angry and intoxicated. Further, the District Court found that Porter’s discharge of the rifle was actually illegal, as § 61-8-369, MCA (1997), makes it a misdemeanor to shoot any firearm from or across the right-of-way of any state or federal highway or county road. Since Porter was either on or near a county road when he shot his rifle, his conduct was illegal. Therefore, because Porter shot his rifle at nighttime, while angry and intoxicated, from a county road adjacent to an occupied public campground, his situation is not analogous to that of the fictitious Jones.
*155 ¶19 Porter further asserts that under the Lambert definition of “knowingly,” insufficient evidence existed to prove that he was aware of the high probability that his conduct would cause a substantial risk of death or serious bodily injury to other campers at the Slate Creek campground. More specifically, Porter maintains thát there was insufficient evidence to prove that the safety was off on his rifle, or that Porter’s finger was on the trigger, when he “beaded down” on the other campers from his vantage point on the hill. As we stated above, the standard of review for challenges to the sufficiency of evidence supporting a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Bauer, ¶ 15. This Court noted in State v. Brown (1989), 239 Mont. 453, 457, 781 P.2d 281, 284, that this familiar standard “gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.”
¶20 The criminal endangerment charge upon which Porter was convicted pertained to his conduct regarding Randy Hill and his family. The jury heard testimony at trial from both Randy and his wife Joyce Hill. Randy and Joyce were at the campsite when Porter and his brother Jeff engaged in a physical fight. They were both aware that Porter was drunk and in possession of a rifle. Joyce testified that she was frightened by Porter’s behavior, and had pleaded with Willoughby not to go up the hill to speak with Porter. Randy, Joyce, and the other campers heard approximately five gunshots, and watched as Willoughby returned to the campsite with wounds on his face and lower back. Randy testified that Porter later reappeared at the campsite and told him that he had “beaded down” on all of the people around the campfire with his rifle. Randy further testified that he understood the phrase “beaded down” to mean “take aim.” Randy also informed the jury that Porter’s statement had frightened him, and that he was unable to sleep until after police officers arrived at the campground.
¶21 At the close of the State’s case, Porter moved for a directed verdict on the criminal endangerment charges against him. The District Court denied this motion, noting with regard to Porter’s statement to Randy Hill: “If you give credence to the statement, then [Porter] was just a trigger finger away from possibly killing someone or at least a trigger pull away, and he was dead drunk at the time.” As such, the District Court found that Porter’s conduct, of “beading” his rifle on human *156 targets, while intoxicated and angry, and after prior reckless firing, constituted sufficient evidence of the crime of criminal endangerment to present a jury question.
¶22 Despite the District Court’s conclusion, Porter contends that because the State did not prove that the safety was off on his rifle, or that Porter’s finger was actually on the trigger when he “beaded down” on the campers, a reasonable jury could not have found that there was sufficient evidence to support a conviction of criminal endangerment. We disagree. Although the State may not have specifically proven the above facts, it was certainly possible for the jury to infer them. Porter sat on the hill and discharged his rifle approximately five times while Randy, Joyce, and the other campers sat at the campsite below. It was therefore not unreasonable for the jury to assume that Porter was capable of discharging that same rifle when he “beaded down” on the campers moments later. Moreover, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact. Section 26-1-301, MCA. Randy testified that Porter admitted he had “beaded down” on all of the campers sitting around the campfire with his rifle. We hold that sufficient evidence existed upon which a rational trier of fact could have found that Porter was aware of the high probability that his conduct would cause a substantial risk of death or serious bodily injury to Randy Hill and his family on July 18, 1998. Accordingly, the District Court did not err in denying Porter’s motion for a directed verdict.
ISSUE 2
¶23 Was Porter denied his right to effective assistance of counsel by defense counsel’s failure to move for a mistrial?
¶24 In his amended petition for post-conviction relief, Porter alleged that he was denied his right to effective assistance of counsel. Specifically, Porter contended that because members of the prospective jury witnessed him in handcuffs, leg irons, and waist shackles, his attorney should have moved for a mistrial. The District Court found defense counsel’s failure to move for a mistrial in response to these circumstances to be harmless error, and dismissed Porter’s claim. Porter appeals the District Court’s dismissal of his petition for post-conviction relief with regard to this issue.
¶25 In rejecting Porter’s claim, the District Court noted that despite Porter’s contention that the jury witnessed him in waist shackles and leg irons, no witnesses or affidavits were offered to substantiate Porter’s claim. In fact, three of the four jurors who testified at the *157 hearing on Porter’s petition for post-conviction relief had no recollection of Porter appearing before them in waist shackles or leg irons, and the fourth juror was uncertain. On the basis of this testimony, the District Court found that Porter was restrained only by handcuffs during his appearance before the jury panel. Accordingly, handcuffs are the sole form of restraint we will consider in evaluating this issue.
¶26 In State v. Hagen, 2002 MT 190, ¶ 17, 311 Mont. 117, ¶ 17, 53 P.3d 885, ¶ 17, we noted that “a petitioner seeking to reverse a district court’s denial of a petition for postconviction relief based on a claim of ineffective assistance of counsel bears a heavy burden.” To assess a claim of ineffective assistance of counsel, both on direct appeal and in post-conviction proceedings, this Court applies the two-prong test from Strickland v. Washington (1984), 446 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The Strickland test requires the defendant to “show that his counsel's performance was deficient and that the deficient performance prejudiced the defense and deprived the defendant of a fair trial.” Dawson v. State, 2000 MT 219, ¶ 20, 301 Mont. 135, ¶ 20, 10 P.3d 49, ¶ 20. This Court has further noted that: “Pursuant to Strickland, a defendant alleging ineffective assistance of counsel must demonstrate that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Dawson, ¶ 20.
¶27 At the hearing on Porter’s petition for post-conviction relief, defense counsel testified that Porter was in handcuffs when he entered the courtroom. He further testified that no other restraining devices were placed on Porter. Defense counsel testified that he requested the handcuffs be removed from Porter’s wrists, and that his request was promptly granted. Finally, defense counsel noted that although prospective jurors may have been in the courtroom when Porter initially entered in handcuffs, Porter’s handcuffs were removed before the jury was seated in the jury box. When questioned about his failure to move for a mistrial in response to the jury’s possible observation of Porter in restraints, defense counsel stated that “the outcome of the cases that I had seen is there was no prejudice to be found [in] be[ing] seated in front of a jury wearing handcuffs.”
¶28 Porter asserts that defense counsel’s failure to move for a mistrial stemmed from ignorance rather than informed, professional deliberation, as the jury’s observation of him in restraints was inherently prejudicial. We disagree. This Court addressed a similar situation in State v. Baugh (1977), 174 Mont. 456, 571 P.2d 779. In *158 Baugh, the defendant was escorted to trial in handcuffs, which were then unlocked in front of the jury before the trial commenced. Baugh, 174 Mont. at 458, 571 P.2d at 780. Despite the jury’s obvious observation of the defendant in restraints, we noted that the “right to be free of shackles during trial need not be extended to the right to be free of shackles while being taken back and forth between the courthouse and the jail.” Baugh, 174 Mont. at 462-63, 571 P.2d at 782-83. This Court concluded that the defendant in Baugh was not prejudiced by the jury’s view of him in handcuffs, as “a defendant is not denied a fair trial and is not entitled to a mistrial solely because he was momentarily and inadvertently seen in handcuffs by jury members.” Baugh, 174 Mont. at 463, 571 P.2d at 783.
¶29 The above holding from Baugh was echoed by this Court in both State v. Pendergrass (1980), 189 Mont. 127, 615 P.2d 201; and State v. Schatz (1981), 194 Mont. 59, 634 P.2d 1193. In Pendergrass, the defendant asserted that the jury’s observation of him in handcuffs prior to the commencement of trial affected the presumption of innocence he should have been afforded. Pendergrass, 189 Mont. at 133, 615 P.2d at 205. We determined that the jury’s view of the defendant in restraints was momentary and inadvertent, stating: “In the absence of an indication of prejudicial consequences, such an occurrence does not warrant the granting of a new trial.” Pendergrass, 189 Mont. at 134, 615 P.2d at 205. In Schatz, the defendant was seen in handcuffs by members of the jury while being transported from the courtroom back to confinement. Schatz, 194 Mont. at 63, 634 P.2d at 1196. This Court relied upon the holding in Baugh and again concluded that “there was no showing of prejudice to the defendant resulting from the momentary viewing.” Schatz, 194 Mont. at 63, 634 P.2d at 1196.
¶30 Despite our previous holdings in Baugh, Pendergrass, and Schatz, Porter invites this Court to adopt the reasoning of Rhoden v. Rowland (9th Cir. 1999), 172 F.3d 633. In Rhoden, the Ninth Circuit Court of Appeals concluded that habeas relief was warranted when a defendant’s shackling in the courtroom was visible to the jurors. Rhoden, 172 F.3d at 636. The Rhoden Court held that the defendant’s shackling during trial amounted to a denial of his due process rights, as the shackles had a “substantial and injurious effect or influence in determining the jury’s verdict, and thus did not constitute harmless error.” Rhoden, 172 P.3d at 637.
¶31 Rhoden is distinguishable from the instant case. In Rhoden, the defendant was shackled for the duration of his trial. Porter wore *159 handcuffs for only moments in front of a group of potential jurors, and never again appeared before the jury in restraints. Furthermore, the Rhoden Court noted that when a defendant’s shackling was not actually observed by the jury during trial, such shackling amounted to harmless error. Rhoden, 172 P.3d at 636.
¶32 Under the facts presented here, and pursuant to our holdings in Baugh, Pendergrass, and Schatz, we conclude that Porter has failed to establish any prejudice as a result of the momentary observation of him in handcuffs by prospective jurors prior to the commencement of trial. Thus, the failure of Porter’s attorney to move for a mistrial did not constitute ineffective assistance of counsel.
¶33 For the foregoing reasons, the judgment of the District Court is affirmed.
CHIEF JUSTICE GRAY, JUSTICES NELSON and LEAPHART concur.