

DA 12-0176

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 56

JACK N. RUKES,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 11-1401
                    Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jack N. Rukes, self-represented, Shelby, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General; Micheal S. Wellenstein,
        Assistant Attorney General; Helena, Montana

        Fred Van Valkenburg, Missoula County Attorney, Missoula, Montana

                    Submitted on Briefs:  January 31, 2013

                            Decided:   March 5, 2013

Filed:

                                        _____
                                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Jack Rukes appeals the Fourth Judicial District Court's order dismissing his Petition for Post-Conviction Relief. The dispositive issue on appeal is whether the District Court erred in dismissing the petition. We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 On May 27, 2009, Rukes was arrested and taken to the Missoula County Detention Center based on alleged criminal conduct including the assault of his wife. At the detention center, Officer Stacy Lear did not record her interview with Rukes, but instead took notes which she later converted into a written report to be used in evidence. Rukes filed a motion to suppress his statements from evidence because the interview violated newly-enacted legislation requiring that custodial interrogations be recorded. Sections 46-4-406 through -411, MCA (effective October 1, 2009). On September 24, 2009, the District Court denied his motion to suppress because the statutes were not yet in effect.

¶3 The District Court set a jury trial for January 6, 2010. Rukes originally retained private counsel, Kathleen Foley and William Boggs, who withdrew from representation shortly before the trial date due to Rukes's inability to fulfill fee obligations and because they fundamentally disagreed with Rukes about whether he should proceed to trial. Upon their withdrawal, the District Court appointed Christopher Daly to represent Rukes and Rukes chose to continue the trial in order to provide his new attorney with adequate preparation time. Daly represented Rukes in his March 10, 2010, jury trial. During the

2

trial, a courtroom officer reportedly sat close enough to Rukes that a juror asked the bailiff who the man was, and the bailiff indicated that he was "Mr. Rukes's guard."

¶4      On March 11, 2010, the jury found Rukes guilty of felony Aggravated Assault and misdemeanor Unlawful Restraint. On June 1, 2010, the District Court sentenced Rukes to twenty years in Montana State Prison with ten years suspended on the felony offense and six months in jail on the misdemeanor offense, to be served concurrently. The District Court ordered a mental evaluation of Rukes and that he have no contact with his wife and children.

¶5      On January 19, 2011, Rukes's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967) and § 46-8-132(2), MCA, discussing nine arguable appeal issues: (1) the court erred in denying Rukes's motion to suppress; (2) the court erred in granting Foley's and Boggs's motion to withdraw; (3) the court abused its discretion in refusing to exclude a witness from the courtroom; (4) the court failed to fully and fairly instruct the jury; (5) Rukes was denied due process as a result of the bailiff's misconduct; (6) Rukes was denied a speedy trial; (7) the court abused its discretion in ordering a mental examination of Rukes; (8) the court violated Rukes's Fifth Amendment rights by relying on the mental evaluations in sentencing; and (9) Rukes received ineffective assistance of trial counsel. Rukes's appellate counsel could not identify any meritorious issues and requested permission to withdraw from representation.

¶6     On March 8, 2011, this Court entered an order noting that Rukes had failed to file a response to his attorney's *Anders* brief and granting appellate counsel's motion to withdraw. We dismissed Rukes's appeal, concluding that "an appeal in this case would be wholly frivolous." Rukes thereafter filed a response and we granted his motion requesting consideration of the late response. On March 29, 2011, after consideration of Rukes's response, we upheld our previous order dismissing his appeal and permitting his counsel's withdrawal.

¶7     Proceeding *pro se*, Rukes then filed in the District Court a Petition for Post-Conviction Relief, raising twelve issues. The court noted in its February 8, 2012 order that "virtually all of the Petitioner's claims are nothing more than his personal argument and speculation" and that most of Rukes's arguments had been addressed on direct appeal. The District Court nonetheless discussed the merits of Rukes's claims. In addressing Rukes's claims of ineffective assistance of counsel, the court ordered Foley and Boggs to respond by affidavit to Rukes's allegation that they had failed to provide him with a copy of a proposed plea agreement, failed to explain the plea agreement and failed to explain consequences of proceeding to trial. The court ordered Daly to respond by affidavit to Rukes's claim that he failed to move for a new trial after the bailiff allegedly committed misconduct. Having reviewed the attorneys' affidavits, the court determined that Rukes's petition did not demonstrate "any kind of error, cumulative or otherwise," and dismissed the petition. Rukes appealed *pro se* to this Court.

**STANDARD OF REVIEW**

¶8    We review the district court's denial of a petition for postconviction relief to determine whether its findings of fact are clearly erroneous and whether its legal conclusions are correct. *Miller v. State*, 2012 MT 131, ¶ 9, 365 Mont. 264, 280 P.3d 272. Grounds for relief "that were or could reasonably have been raised on direct appeal may not be raised, considered or decided in a proceeding" for postconviction relief. Section 46-21-105(2), MCA.

¶9    Ineffective assistance of counsel claims present mixed questions of law and fact that we review de novo. *Miller*, ¶ 9. To prevail on such a claim, the petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, 183 P.3d 861 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We apply the same standard when reviewing claims of ineffective assistance of appellate counsel. *Rogers v. State*, 2011 MT 105, ¶ 37, 360 Mont. 334, 253, P.3d 889.

**DISCUSSION**

¶10   Rukes argues that the District Court erred in dismissing his Petition for Post-Conviction Relief on the following grounds: (1) the District Court erred in denying his motion to suppress his statements from evidence; (2) Rukes was denied a speedy trial; (3) Daly provided ineffective assistance of counsel; (4) Foley and Boggs provided ineffective assistance of counsel; (5) the court erred in granting Foley's and Boggs's motion to withdraw; and (6) counsels' cumulative errors warrant reversal.

5

¶11 We agree with the State that, with the exception of several of Rukes's ineffective assistance of counsel claims, most of Rukes's claims are barred from appellate review under § 46-21-105(2), MCA, because they were or could have been raised on direct appeal.

¶12 *1. Denial of Rukes's motion to suppress.*

¶13 Rukes argues that the District Court erred in denying his motion to suppress the statements he made during his May 2009 interview because the interview was not recorded, in violation of §§ 46-4-406 through -411, MCA. He also argues that the court should have compelled Officer Lear to produce her original handwritten notes. Rukes's appellate counsel raised these issues in her *Anders* brief and, after independent examination of the record and consideration of Rukes's arguments, we agreed that they were without merit. As noted, the statutes require recordation of custodial interrogations, but became effective in October 2009, several months after Rukes's interview. We will not consider the issue again in reviewing the District Court's denial of Rukes's Petition for Post-Conviction Relief. Section 46-21-105(2), MCA.

¶14 *2. Whether Rukes was denied a speedy trial.*

¶15 Similarly, we will not consider Rukes's argument that he was denied the right to a speedy trial. Appellate counsel raised that question in her *Anders* brief and suggested it was frivolous, based in part on the following exchange during pre-trial proceedings:

> THE DEFENDANT: Your Honor, I feel it's more important to have good representation than to have a speedy trial. I feel that — I don't care if it's two or three months down the road, whatever it takes to prepare. . . .

6

THE COURT: You've said enough. If you are willing right now, with your eyes wide open and understand what's going on, that you have a right to a speedy trial but you're willing to waive it because of circumstances in this case —

THE DEFENDANT: Yeah.

¶16 On direct appeal, we reviewed the record and agreed with appellate counsel that the issue lacked merit; we decline to reconsider it. Section 46-21-105(2), MCA.

¶17 *3. Ineffective assistance of trial counsel.*

¶18 Rukes alleges that Daly provided ineffective assistance of counsel because he improperly portrayed Rukes during his opening statement as "a drunken wife abuser," failed to move for a new trial based on the bailiff's misconduct, failed to counsel Rukes regarding his right against self-incrimination, failed to object during sentencing to court-ordered mental evaluations, and failed to object to an improper condition of Rukes's sentence—namely, a condition prohibiting Rukes from contacting his two daughters who were not involved in the incident that gave rise to Rukes's convictions.

¶19 The District Court rejected the claim that Rukes's attorney made a prejudicial comment during opening statement. Rukes failed to point out a specific comment and, searching the record, the court concluded that the alleged statement was "a figment of the Petitioner's imagina[tion]." The court also recognized that an improper opening statement "would be record-based and should have been raised on direct appeal[.]" We agree. *See State v. Howard*, 2011 MT 246, ¶ 21, 362 Mont. 196, 265 P.3d 606 ("When claims of ineffective assistance are capable of resolution by examining the record alone, they are appropriate for consideration on direct appeal."). Furthermore, the trial

7

transcript indicates only that Daly stated Rukes "had been drinking." Rukes has not explained how this statement prejudiced the outcome of his trial or rendered Daly's performance "deficient." *Whitlow*, ¶ 10. His contention that appellate counsel provided ineffective assistance of counsel based on her failure to raise this issue lacks merit for the same reasons. *Heddings v. State,* 2011 MT 228, ¶ 33, 362 Mont. 90, 265 P.3d 600 (counsel is not ineffective for failing to "make motions or objections which, under the circumstances, would have been frivolous").

¶20 We turn to Rukes's claim that Daly was ineffective for failing to file a motion for a new trial following the bailiff's alleged misconduct. Appellate counsel suggested in her *Anders* brief that the bailiff's communication with the jurors did not constitute reversible error because Rukes could not demonstrate prejudicial consequences. *State v. Baugh,* 174 Mont. 456, 465, 571 P.2d 779, 784 (1977). We agreed that the record did not demonstrate any prejudice resulting from the bailiff's misconduct. As a consequence, Daly's failure to move for a new trial on that basis also is without merit. *See Porter v. State,* 2002 MT 319, ¶ 32, 313 Mont. 149, 60 P.3d 951 (defendant failed to "establish any prejudice as a result of the momentary observation of him in handcuffs by prospective jurors" and thus counsel's failure to move for a mistrial was not deficient).

¶21 Each of Rukes's other arguments regarding Daly's alleged ineffectiveness was discussed in appellate counsel's *Anders* brief and considered by this Court in dismissing his direct appeal. Appellate counsel noted that, to prevail on his ineffective assistance of counsel claims, a defendant generally must demonstrate that the reasons for counsel's

actions appear in the record, or that there is no plausible justification for counsel's actions. *State v. Kougl*, 2004 MT 243, ¶¶ 14, 21, 323 Mont. 6, 97 P.3d 1095. Since the record in this case did not reflect counsel's reasons for failing to object to the involuntary mental evaluations or the sentencing condition, appellate counsel suggested that the ineffective assistance claims were unsubstantiated. We agreed. In this postconviction proceeding, Rukes offers nothing to substantiate his allegations that Daly's performance was deficient or that, absent such deficiency, the result of the proceeding would have been different. *See Ellenburg v. Chase*, 2004 MT 66, ¶ 16, 320 Mont. 315, 87 P.3d 473 ("[A] petition for postconviction relief must be based on more than mere conclusory allegations."). He has not met his burden of showing reversible error by the District Court in denying his petition.

¶22    *4. Ineffective assistance of counsel during pre-trial proceedings.*

¶23    Rukes argues that Foley and Boggs provided ineffective assistance due to their failure to pursue a speedy trial, failure to provide Rukes with a copy of the State's proposed plea agreement, and failure to advise him of the consequences of rejecting the plea agreement. As noted, we addressed the speedy trial issue on direct appeal. In ruling on Rukes's petition for postconviction relief, the District Court determined that "Petitioner's own actions belie the viability of this claim which clearly cannot be sustained as a matter of fact." The court dismissed the claim for failure to state a claim for relief under § 46-21-201(1)(a), MCA.

9

¶24 The court pointed out that on April 11, 2010, Rukes wrote a letter to the court, indicating that he refused the plea bargain due to his distrust of the prosecutor. The letter stated:

> [I] was offered a plea bargain of 5 or 10 years suspended by Suzy Boylan. It was enticing but I took information acquired from other attorneys; informing me of Suzy's "demon pursuits linked to careerism who is acting like the zelots [sic]." One attorney went so far as to say "Suzy is so unreasonable that she needs mental intervention." I was also informed that any judge in Missoula is more reasonable than her.

¶25 Foley and Boggs stated in their affidavit that even when Rukes's bill was in arrears and their motion to withdraw was pending, they worked for free on "both trial preparation and negotiations to settle the case on terms favorable to Rukes." They stated that they "spent hours discussing the pros and cons of going to trial with Rukes, and advised him in no uncertain terms (although he did not want to hear it) that he would very likely end up in prison for a significant period if he went to trial." Foley and Boggs attest that they went through significant effort to secure a plea offer that "would have saved Rukes had he not reneged on it." They stated that upon receiving the plea agreement from the prosecutor on December 28, 2009, they "brought the Agreement to Rukes to sign. Instead he asked to keep it overnight, so we left it with him." Rukes initially had indicated to Foley and Boggs that he would accept the plea agreement, but changed his mind. Attached as an exhibit to Foley's and Boggs's affidavit was an email from Foley to prosecutor Boylan stating as follows:

> I brought the Plea Agreement that Jack had accepted out to review with him yesterday and spent a couple hours in discussion and answering all his

10

questions. He wanted to keep it over night. When I went back this morning to see him and retrieve the documents, he had changed his mind.

¶26 The affidavit and supporting documents provide further support for the District Court's conclusion that Rukes's ineffective assistance of counsel claim was without merit. Rukes had the burden of establishing his claim through material facts; his unsupported allegations do not suffice to demonstrate that Foley and Boggs failed to provide him with a copy of the plea agreement or to advise him of the consequences of proceeding to trial. *Ellenburg*, ¶ 16. The District Court did not err in dismissing the claim.

¶27 *5. Withdrawal of Foley and Boggs from representation.*

¶28 We addressed on direct appeal Rukes's contention that the District Court erred in granting Foley's and Boggs's motion to withdraw from representation. Foley and Boggs moved to withdraw due to Rukes's inability to pay his fee obligations and because a fundamental disagreement between counsel and Rukes arose from his refusal to accept the plea agreement. The District Court considered their motion during its December 29, 2009, hearing. His appellate counsel could find no authority to support a conclusion that the District Court abused its discretion in granting the motion to withdraw, unless counsels' withdrawal violated Rukes's speedy trial right. We already have addressed that question in ¶¶ 14-16, above.

¶29 *6. Whether counsels' cumulative errors warrant reversal.*

¶30 The doctrine of cumulative error "is appropriate to reverse a defendant's conviction only where a number of errors, taken together, prejudiced the defendant's

11

right to a fair trial." *Howard*, ¶ 40 (quoting *State v. Ferguson*, 2005 MT 343, ¶ 126, 330 Mont. 103, 126 P.3d 463) (internal quotation marks omitted). We have considered all of the arguments Rukes has made on appeal. For the reasons already discussed, we agree with the District Court that Rukes has not met his burden of establishing that any error of his pre-trial and trial counsel prejudiced his right to a fair trial.

¶31 We affirm the District Court's dismissal of Rukes's Petition for Post-Conviction Relief.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON